**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 15, 2017**

# In the Court of Appeals of Georgia

A16A1512. RL BB ACQ I-GA CVL, LLC v. WORKMAN, et al.

BRANCH, Judge.

The current appeal arises out of a post-judgment discovery dispute, and it presents this Court with several unique questions. First, the appeal requires us to determine whether a party involved in a post-judgment discovery dispute can assert a claim for attorney fees under OCGA § 9-15-14. Additionally, this case poses the question of whether a party who fails to request an award of expenses (including attorney fees) at the time it moves for a protective order can seek such an award at a later time, by way of a separate motion for sanctions. And assuming that a party may bring a separate sanctions motion to recover expenses incurred in obtaining a protective order, the question becomes whether the Civil Practice Act allows that

party to recover the expenses associated with such a sanctions motion. We address each of these questions, as well as other relevant issues, below.

The record shows that after RL BB ACQ I-GA CVL, LLC ("Rialto"), obtained a $1.9 million judgment against Cooper Village, LLC, and Howard Workman (collectively, the "Judgment Debtors"), the company served post-judgment discovery requests on Howard's wife, Honey C. Workman, and 16 separate LLCs[1] managed by Honey and in which Howard had an ownership interest. Honey and the LLCs (collectively, the "Third Parties") limited their discovery responses to information and documents relating to or evidencing assets belonging to or transferred from the Judgment Debtors and/or transactions involving the Judgment Debtors. Rialto then served additional discovery requests on Fidelity Bank, seeking numerous documents relating to any account held at Fidelity by Cooper Village, Howard, Honey, and/or any of the LLCs. The Third Parties sought and obtained a protective order that limited the discovery Rialto could receive from Fidelity. Approximately six weeks after entry

---

[1] These included 302 Research, LLC; 8040 Roswell, LLC; Abbotts Bridge Commons, LLC; Crystal Valley, LLC; Duluth Joint Venture, LLC; Norcross Shooting Range, LLC; PTC East, LLC; Rockdale Boulevard, LLC; Warm Springs Storage, LLC; West Vista, LLC; Windward Forest II, LLC; WR 3400, LLC; W. Family, LLC; W. Family II, LLC; P-B Road Associates, LLC; and Sandy Springs Shooting Range, LLC.

of that order, and three days after Rialto's attorneys allegedly failed to appear to take Honey's deposition, the Third Parties filed a motion seeking costs, attorney fees, and sanctions under OCGA § 9-15-14, § 9-11-26, § 9-11-30, and § 9-11-37. Following a hearing, the trial court granted that motion and entered an order requiring Rialto and its attorneys to pay the fees and costs incurred by the Third Parties in moving for the protective order, in preparing for and attending Honey's deposition, and in pursuing their motion for sanctions. That order also sanctioned Rialto by barring it from conducting a post-judgment deposition of Honey for a period of five years.

Rialto now appeals, asserting that the trial court erred in basing its award of fees and costs on OCGA § 9-15-14. Rialto further contends that any award based on OCGA § 9-15-14 must be reversed because the findings of fact on which the trial court based that award are not supported by the evidence and because the trial court failed to determine what portion of the fees claimed by the Third Parties were attributable to Rialto's sanctionable conduct. Additionally, Rialto argues that the trial court erred in awarding the Third Parties the costs and fees they incurred in preparing for and attending Honey's deposition and in bringing the sanctions motion. Finally, Rialto asserts that the Third Parties waived their right to seek an award under OCGA § 9-11-26 because they did not assert a right to recover under that statute until they

3

filed their reply in support of their sanctions motion, and because they did not request their costs and fees at the time they moved for the protective order.

We find that OCGA § 9-15-14 does not apply to post-judgment discovery, and we reverse the trial court's order to the extent that it holds otherwise. Additionally, for reasons explained more fully below, we reverse the trial court's award of the Third Parties' costs and fees incurred in preparing for and attending Honey Workman's deposition and in bringing the sanctions motion. We also reverse the court's imposition of the non-monetary sanction against Rialto. Finally, we vacate that part of the court's order awarding the Third Parties the costs and fees associated with their motion for a protective order and remand for further proceedings on the question of whether OCGA § 9-11-26 permits a party to pursue such an award by way of a separate sanctions motion, filed after the motion for a protective order has been heard and decided.

"[T]rial courts are afforded broad discretion to control discovery and to impose sanctions for a party's failure to comply with discovery requests, and this Court will not reverse a trial court's ruling on such matters absent an abuse of discretion." *North Druid Dev. v. Post, Buckley, Schuh & Jernigan*, 330 Ga. App. 432, 434-435 (1) (767 SE2d 29) (2014) (citation and footnote omitted). See also *In Re Callaway*, 212 Ga.

4

App. 500, 501 (442 SE2d 309) (1994) (under the Civil Practice Act, the trial court's broad discretion with respect to discovery extends to post-judgment discovery). Such an abuse of discretion occurs where the trial court either fails to apply or misapplies the relevant law. See *North Druid Dev.*, 330 Ga. App. at 441 (on motion for reconsideration); *Mathis v. BellSouth Telecommunications*, 301 Ga. App. 881 (690 SE2d 210) (2010).

The relevant facts are undisputed and show that in exchange for a $5.5 million loan from BB&T Bank, Cooper Village provided the bank with both a promissory note and a security interest in certain real property located in Gwinnett County. Howard, who executed all of the loan documents in his capacity as manager of Cooper Village, also gave a personal guaranty to secure the note. BB&T eventually assigned its rights under all of the loan documents, including Howard's personal guaranty, to Rialto. After Cooper Village defaulted on the note and Howard refused to honor his guaranty, Rialto exercised its rights under the deed to secure debt, sold the Gwinnett County property for $4 million, and obtained a judicial confirmation of that sale.[2]

---

[2] In an unpublished opinion dated March 21, 2014, this Court affirmed the confirmation order pursuant to Court of Appeals Rule 36.

5

In July 2012, Rialto sued Cooper Village and the Workmans in Fulton County Superior Court seeking a deficiency judgment for the amounts owed under the promissory note. In its complaint, Rialto asserted a claim against Cooper Village for breach of the promissory note, a claim against Howard for breach of the guaranty, and a claim against both Howard and Honey for fraudulent transfer of property.[3] Rialto sought and received summary judgment on its contractual claims against Cooper Village and Howard, and on May 22, 2013, the trial court entered judgment against those two defendants jointly and severally in the amount of $1,970,417.92 plus interest. Rialto voluntarily dismissed its remaining claims without prejudice on January 22, 2014, and the trial court entered an order closing the case on February 18, 2014.

During January and February 2014, Rialto served separate post-judgment discovery requests (including interrogatories and request to produce) on each of the Third Parties. The discovery requests served on Honey demanded all of her personal financial records and the financial records of any entity in which she owned at least

_____

[3] In support of its fraudulent transfer claim, Rialto alleged that on or about December 1, 2009, Howard transferred title to a piece of real property (identified as the "Cold Branch Property") to Honey without receiving anything of value in exchange, and that he did so for the purpose of hindering or defrauding his creditors.

6

a five percent interest, dating back to January 1, 2009. The requests served on the third party LLCs demanded, among other things, all of the financial records of each entity. The Third Parties objected to producing all of the financial information requested by Rialto, but agreed to produce documents relating to any assets belonging to Howard or any transfers of funds or property to or from Howard. It appears that the Third Parties thereafter provided such information to Rialto in the spring of 2014. Approximately one year later, in May 2015, Rialto served post-judgment discovery requests on Fidelity Bank, which sought "any and all documents that relate, reflect, or refer to bank statements, copies of checks (front and back), deposits, wire transfers, debits, and credits of Howard B. Workman; Honey B. [sic] Workman; Cooper Village, LLC; [the 16 LLCs;] or any other entity or trust in which Fidelity Bank knows that Howard B. Workman maintains an interest." The Third Parties objected to these requests, and when the parties could not reach an agreement as to the appropriate scope of discovery from Fidelity, the Third Parties filed a motion for a protective order. Following a hearing, the trial court entered an order granting the

motion and limiting the discovery Rialto could obtain from Fidelity.[4] The Third

Parties did not request an award of their costs and fees at the time they moved for the

protective order, and the order entered by the trial court did not make such an award.

The protective order was entered on July 24, 2015, and on that same day an

attorney for Rialto emailed the attorneys representing the Third Parties requesting that

they provide him with dates Honey and Howard would be available for post-judgment

depositions. An attorney for the Third Parties responded that the firm no longer

represented Howard and that they would provide possible dates for Honey's

deposition at a later time. On August 3, the attorney emailed Rialto's lawyer

reiterating that the firm no longer represented Howard, stating that it could not accept

service on Howard's behalf, providing a list of six dates that Honey could be made

---

[4] As requested by the Third Parties, the trial court limited the scope of post-judgment discovery that Rialto could obtain from either Fidelity or other financial institutions to documents or information relating to: "(1) any property owned by . . . the Judgment Debtors that is subject to execution, (2) any property transferred between the [Third Parties] on the one hand and the Judgment Debtors on the other, and (3) any funds or other property that the [Third Parties] may owe to the Judgment Debtors." Additionally, the order limited the document production from Fidelity to copies of checks or other documents showing payments from the Third Parties to the Judgment Debtors; copies of deposit slips or other documents showing payments from the Judgment Debtors to the Third Parties; any documents showing the assets of the Judgment Debtors; and any documents evidencing debts owed by the Third Parties or Fidelity to the Judgment Debtors.

8

available for a deposition (including September 1, 2015), and expressing their desire that Honey's deposition occur at her lawyers' offices. Rialto's attorney responded, "September 1, 2015 at your office. We'd like to depose [Howard] on September 2, if possible." The email did not specify a time for Honey's deposition, and Rialto never formally noticed that deposition.

At 9:09 a.m. on September 1, counsel for the Third Parties emailed Rialto's attorney that Honey was at counsel's offices for her deposition "but, as of now, no attorneys for Rialto have appeared at our office. Are you no longer deposing her today?" Rialto's lawyer responded, "We are not – we did not serve the notice for that day to confirm." Three days later, the Third Parties filed the motion that gave rise to this appeal.

The motion asserted a claim under OCGA § 9-15-14 for the attorney fees and costs incurred by the Third Parties in moving for the protective order, in preparing for Honey's deposition, and in bringing the attorney fees motion. The Third Parties argued that they were entitled to assert a claim under OCGA § 9-15-14 because Rialto had acted unreasonably during post-judgment discovery. They further asserted that OCGA § 9-11-30 (d) entitled them to an award of all expenses (including attorney fees) associated with preparing Honey for her deposition, and that OCGA § 9-11-26

9

and § 9-11-37 entitled them to an award of expenses associated with their motion for a protective order. Finally, although there was no evidence that Rialto had violated or otherwise attempted to circumvent the protective order, the Third Parties sought an award of sanctions against Rialto under OCGA § 9-11-26 and 9-11-37.

Following a hearing, the trial court granted the Third Parties' motion and entered an order affording the Third Parties all of the relief they had requested. Specifically, the trial court found that Rialto's conduct in serving broad post-judgment discovery on Fidelity and in opposing the motion for the protective order violated OCGA § 9-15-14; that Rialto's failure to appear for Honey's deposition violated both OCGA § 9-15-14 and OCGA § 9-11-30; and that regardless of the merits of Rialto's opposition to the protective order, OCGA § 9-11-26 and OCGA § 9-11-37 required the court to award the Third Parties, as the prevailing movants, the costs and attorney fees they incurred in pursuing the protective order. Based on evidence submitted by the Third Parties in support of their motion, the trial court

10

awarded the Third Parties $41,602 in attorney fees[5] and $616.73 in expenses,[6] and

entered judgment against Rialto and their attorneys for that amount. The order further

provided that "pursuant to OCGA § 9-11-26 (c) and OCGA § 9-11-37 Rialto is

prohibited from taking any further oral post-judgment examination of [Honey] for a

period of [five] 5 years from the date of the entry of this order." Rialto now appeals

from these rulings.

---

[5] According to the trial court's order, this amount represented $20,318.50 in fees incurred in pursuing the protective order; $3,501.00 in fees incurred "preparing for and attending [Honey's] deposition"; and $17,882.50 in fees incurred in filing the sanctions motion. We note, however, that the evidence does not support the amount of fees awarded with respect to the sanctions motion. The affidavit of the Third Parties' attorney submitted in support of the request for fees stated that the Third Parties had incurred $7,285.00 in fees in preparing the sanctions motion. And at the hearing on the motion, counsel represented to the court that the Third Parties had incurred $7,285.00 in fees "in preparing the instant motion for sanctions." The order signed by the trial court (and which was prepared by the attorneys for the Third Parties), however, increased that amount by approximately $10,000.

[6] This amount represented $512.13 in costs incurred in pursuing the protective order and $104.60 in costs incurred in pursuing the sanctions motion. Again, however, the record does not support the finding of costs as to the sanctions motion. Counsel for the Third Parties averred that his clients had incurred no expenses in association with the sanctions motion, and he reiterated that statement to the trial court at the motion hearing.

1. Rialto contends that the trial court erred in finding that the Third Parties were entitled to recover costs and attorney fees under OCGA § 9-15-14. We agree, although not for the reasons argued in Rialto's brief.

The question that neither the parties nor the trial court considered is whether OCGA § 9-15-14 applies to post-judgment discovery disputes. In analyzing this question, we are guided by the plain language of OCGA § 9-15-14 itself, as

> we must presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Deal v. Coleman*, 294 Ga. 170, 172-173 (1 (a) (751 SE2d 337) (2013) (citations and punctuation omitted). Moreover, because OCGA § 9-15-14 provides for an award of attorney fees, the statute is in derogation of the common law and it must be strictly construed against such an award. *Doster v. Bates*, 266 Ga. App. 194, 195 (1) (596 SE2d 699) (2004).

OCGA § 9-15-14 (a) provides:

> In any civil action in any court of record of this state, reasonable and necessary attorney's fees and expenses of litigation shall be awarded to

12

*any party against whom another party has asserted a claim, defense, or other position* with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position.

(Emphasis supplied.)

Subsection (b) of this statute allows a court to award such expenses and fees "in any civil action in any court of record if," the court

finds that *an attorney or party brought or defended an action, or any part thereof*, that lacked substantial justification or that the action, or any part thereof, was interposed for delay or harassment, or if it finds that *an attorney or party unnecessarily expanded the proceeding* by other improper conduct, including, but not limited to, abuses of discovery procedures available under Chapter 11 of this title, the "Georgia Civil Practice Act."

(Emphasis supplied.)

The plain language of OCGA § 9-15-14 (a) references fees and litigation expenses incurred as the result of an assertion by one party against another of a

13

particular claim, defense, or theory of recovery during the course of a lawsuit.[7]

Similarly, subsection (b) references costs and fees incurred as the result of a party

bringing or defending "an action or any part thereof," or from a party "unnecessarily

expand[ing]" a lawsuit by improper conduct. As this case demonstrates, however,

post-judgment discovery occurs after the underlying civil action has concluded. Thus,

any position taken or conduct occurring in post-judgment discovery is not asserted

as a part of the underlying lawsuit, and such a position or other conduct cannot

expand the underlying litigation. The plain language of OCGA § 9-15-14 makes

clear, therefore, that the statute does not apply to post-judgment discovery.

This conclusion is supported by at least two additional factors. First, the

language of OCGA § 9-11-69, which governs post-judgment discovery, provides that

to facilitate the execution of a judgment "the judgment creditor . . . may do any or all

of the following: (1) [e]xamine any person, including the judgment debtor by taking

depositions or propounding interrogatories; (2) [c]ompel the production of documents

---

[7] While the statute uses the term "civil action," that term is generally viewed as a synonym for "lawsuit." See Black's Law Dictionary (10th Ed. 2014) (defining "civil action"). See also *Carruthers v. City of Hawkinsville*, 171 Ga. 313 (155 SE2d 520) (1930) (interpreting legislature's use of the phrase "cause of action" in a particular statute as synonymous with the legislature's use of the words "claim" and "suit" in the same statute).

14

or things . . . in the manner provided *in this chapter* for such discovery measures prior to judgment." (Emphasis supplied.)

> The purpose of OCGA § 9-11-69 is to allow post[-]judgment discovery to aid a litigant to recover on a liability which has been established by a judgment, in the manner provided for such discovery measures prior to judgment. Thus[,] the trial court has the power to control the details of time, place[,] and scope of [post-judgment] discovery. The court also is authorized to impose sanctions for failure to comply with its [post-judgment] discovery orders.

*Ostroff v. Coyner*, 187 Ga. App. 109, 117 (6) (369 SE2d 298) (1988) (citations omitted). As the foregoing demonstrates, post-judgment discovery is governed by the general discovery provisions of the Civil Practice Act. Id. See also *C-Staff, Inc. v. Liberty Mutual Ins. Co.*, 275 Ga. 624, 625-626 (1) (571 SE2d 383) (2002). OCGA § 9-15-14, however, is not included in Georgia's Civil Practice Act, and therefore OCGA § 9-11-69 provides no basis for extending the application of that statute to post-judgment discovery.

Furthermore, OCGA § 9-15-14 (e) provides that "[a]ttorney's fees and expenses under this Code section may be requested by motion at any time *during the course of the action* but not later than 45 days after *the final disposition of the action*." (Emphasis supplied.) As used in OCGA § 9-15-14 (e), the phrase "final

15

disposition" is synonymous with "final judgment." See *Fairburn Banking Co. v. Gafford*, 263 Ga. 792, 794 (439 SE2d 482) (1994). "A final judgment exists . . . and therefore a case has been finally disposed of for purposes of OCGA § 9-15-14[ ] where the trial court has issued an order that leaves no issues remaining to be resolved, constitutes the court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court." *Horesh v. DeKinder*, 295 Ga. App. 826, 827 (1) (673 SE2d 311) (2009) (citation and punctuation omitted). When considered in conjunction with the fact that post-judgment discovery cannot begin until after final judgment has been entered, the fact that any motion under OCGA § 9-15-14 must be filed no later than 45 days following the entry of final judgment in the underlying case further supports the conclusion that OCGA § 9-15-14 does not apply in the context of post-judgment discovery.[8]

[8] We note that the Third Parties' sanctions motion was filed more than 45 days following the entry of final judgment in the underlying litigation. We further note that OCGA § 9-15-14 does not permit an award of fees and expenses to a nonparty. See *Reeves v. Upson Regional Med. Center*, 315 Ga. App. 582, 587 (2) (726 SE2d 544) (2012) (third party upon whom the plaintiff in the underlying action served a subpoena requiring the production of documents was not entitled to recover under OCGA § 9-15-14 (b) because they were not a party to the lawsuit); *In the Interest of N. S. M.*, 183 Ga. App. 398, 400 (3) (359 SE2d 185) (1987) (a nonparty witness could not assert a claim under OCGA § 9-15-14 for fees and expenses incurred in quashing a subpoena issued by one of the parties). Thus, because none of the LLCs were a party to the underlying litigation, they could not assert a claim under OCGA § 9-15-

16

In light of the foregoing, we reverse those parts of the trial court's order that rely on OCGA § 9-15-14 to support an award of costs and attorney fees to the Third Parties.

2. Given our holding in Division 1, we need not address Rialto's remaining arguments as to why the trial court's award of costs and fees under OCGA § 9-15-14 should be reversed.

3. Rialto contends that the trial court erred in awarding the Third Parties costs and fees associated with attending Honey's deposition and in preparing their client for that deposition. The trial court based its award on OCGA § 9-11-30 (g), which provides that if a party giving notice of a deposition under OCGA § 9-11-30 (b) "fails to attend and proceed therewith and another party attends in person or by attorney pursuant to the notice, the court may order the party giving the notice to pay to such other party the reasonable expenses incurred by him and his attorney in attending,

14. Additionally, although Honey was originally named as a defendant in the underlying lawsuit, the claim against her had been dismissed (and thus Honey was no longer a party to the underlying litigation ) by the time the trial court closed the case and post-judgment discovery began. Nor is Honey a party to the judgment that gave rise to the discovery dispute that led to the sanctions motion.

17

including reasonable attorney's fees."[9] The Third Parties asserted, and the trial court found, that the email exchange between the attorneys for Rialto and counsel for the Third Parties constituted a notice of deposition under OCGA § 9-11-30 (b). We disagree.

OCGA § 9-11-30 (b) requires that to be enforceable, a notice of deposition must be in writing; must be given "to every other party to the action"; and must "state the time and place for taking the deposition, the means by which the testimony shall be recorded, and the name and address of each person to be examined . . . ." OCGA § 9-11-30 (b) (1). Assuming that an email exchange between counsel for the parties satisfies the requirement that a deposition notice be in writing, the exchange in this case fails to satisfy other requirements for such a notice.

Neither the parties to this appeal nor the trial court's order addresses the fact that the Judgment Debtors were parties both to the underlying litigation and to the judgment which resulted in the post-judgment discovery. Thus, to be effective, any

---

[9] In addressing this claim of error, we assume without deciding that an award under OCGA § 9-11-30 (g) is available to a nonparty, if the nonparty appears for a properly noticed deposition and the party serving notice fails to proceed with the same. Additionally, we do not consider whether the legal fees charged for preparing a client for her deposition constitute a cost of attending that deposition, within the meaning OCGA § 9-11-30 (g).

18

notice of Honey's deposition must have been served on Howard.[10] The email exchange at issue shows, however, that although the attorneys for the Third Parties had at one point represented Howard, they had withdrawn from that representation and they therefore explicitly declined to accept service of any deposition notice on his behalf. Moreover, while the email exchange specifies a date and location for the deposition (September 1, 2015 at the offices of the Third Parties' attorneys), it does not specify a time.[11] Nor did the email exchange specify the means by which Honey's testimony would be recorded – i.e., it did not state whether the deposition would be transcribed by a court reporter or videotaped. Given that the email exchange failed to satisfy the notice requirements of OCGA § 9-11-30 (b), the trial court could not make an award under OCGA § 9-11-30 (g) for Rialto's alleged failure to appear for Honey's deposition. Accordingly, we reverse that part of the trial court's order

---

[10] It appears that service on Howard would have also accomplished service on Cooper Village, as the record shows that Howard served as Cooper Village's manager.

[11] Although counsel for the Third Parties emailed Rialto's attorney at 9:09 a.m. on September 1 regarding Rialto's failure to appear, there is nothing in the record showing that the parties had agreed that the deposition would start at or before 9:00 a.m.

19

awarding the Third Parties the expenses and fees they incurred in preparing for and attending Honey's deposition.

4. In light of our holding in Division 3, we also reverse that part of the trial court's order which bars Rialto from deposing Honey for a period of five years. Although Rialto did not specifically enumerate as error the imposition of this sanction, the sanction was based on the erroneous conclusion that Honey's deposition had been noticed in accordance with OCGA § 9-11-30 (b). Moreover, even had the deposition been properly noticed, the Civil Practice Act did not authorize the trial court to impose any sanction other than the award of costs and fees against Rialto. See *Mayer v. Interstate Fire Ins. Co.*, 243 Ga. 436, 438 (2) (254 SE2d 825) (1979) (a trial court may not impose discovery sanctions unless a party has violated a court order regarding discovery or has failed completely to respond to discovery or appear for a deposition); *Carrier Corp. v. Rollins, Inc.*, 316 Ga. App. 630, 638 (5) (a) (730 SE2d 103) (2012) (except in limited circumstances, OCGA § 9-11-37 authorizes a trial court to impose sanctions "only for failure to comply with an order of the court") (citation omitted); OCGA § 9-11-37 (b); OCGA § 9-11-37 (d) (1). Additionally, to the extent that the trial court was relying on the language of OCGA § 9-11-26 (c) (1) to justify the imposition of the sanction in question, that reliance was misplaced.

20

OCGA § 9-11-26 (c) (1) allows a court to include, as part of a protective order, a provision that certain discovery "not be had." Here, however, the trial court was not granting the Third Parties a protective order providing that Rialto could never depose Honey. Rather, it was sanctioning Rialto by barring it from deposing Honey for a certain period of time. And neither OCGA § 9-11-26 nor § 9-11-37 allow the imposition of such a discovery sanction in the absence of evidence showing that a party is in violation of a court order.

Given that we have reversed the finding that served as the basis for the sanction at issue and that the trial court was without authority to impose that sanction, we reverse the same. See *Carter v. Glenn*, 243 Ga. App. 544, 550-551 (2) (533 SE2d 109) (2000) (reversing a legal ruling by a trial court that was not specifically enumerated as error but which was in direct conflict with the statute the court was purportedly applying).

5. Rialto asserts that the relevant provisions of the Civil Practice Act did not authorize the trial court to award the Third Parties the costs and fees they incurred in pursuing their sanctions motion. We agree.

OCGA § 9-11-26 (c), which governs protective orders, states that the provisions of OCGA § 9-11-37 (a) (4) "appl[y] to the award of expenses incurred in

21

relation to" a motion for a protective order. And under OCGA § 9-11-37, where a party prevails on a motion for a protective order,

> the court shall, after opportunity for hearing, require the party . . . whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

OCGA § 9-11-37 (a) (4) (A).

This language clearly contemplates that any award of expenses under OCGA § 9-11-37 (a) (4) (A) will be considered and decided at the time the trial court hears and decides the motion for a protective order. In other words, the statutory scheme does not appear to contemplate that a party will bring a separate "sanctions" motion to recover its costs and fees at some indeterminate point in time after that party prevails on a discovery motion. Our conclusion in this regard is reinforced by the fact that where, as here, a party fails to request their expenses as part of their motion for a protective order but later seeks those expenses, that party has unnecessarily expanded the proceedings and made them more costly for both the parties and the

22

court. And we decline to interpret the statutory scheme so as to encourage the expansion, rather than the consolidation, of discovery related motions.

Finally, and most importantly, even assuming that a party has a right to bring a motion for expenses under OCGA § 9-11-37 (a) (4) (A) that is separate from their motion for a protective order, there is no statutory language authorizing a trial court to award the expenses associated with bringing such a separate motion. Instead, the relevant statutory language authorizes the trial court to award a prevailing party only "the reasonable expenses incurred in obtaining the [protective] order[.]" Id. Accordingly, we find that the trial court was without authority to award the Third Parties the expenses they incurred in pursuing their separate sanctions motion, and we therefore reverse that part of the trial court's order. See *Joyner v. Raymond James Financial Svcs.*, 268 Ga. App. 835, 838-839 (2) (602 SE2d 871) (2004) (Georgia law does not permit an award of attorney fees or litigation costs, unless authorized by statute or contract).

6. Rialto offers two arguments to support its claim that the trial court erred in awarding the Third Parties the expenses they incurred in pursuing the protective order. We address each of these arguments below.

(a) In their opening brief filed in support of their sanctions motion, the Third Parties argued that OCGA § 9-15-14 entitled them to an award of the costs and fees associated with seeking the protective order. In their reply brief, the Third Parties asserted for the first time that an award of such expenses was also proper under OCGA § 9-11-26. Rialto argues that the Third Parties' failure to argue OCGA § 9-11-26 in their opening brief as a basis for the award of their expenses precluded the trial court from basing its award on that statute. This argument is without merit.

There is no rule that precludes a trial court from considering any argument raised at any time before the entry of judgment, provided the opposing party is given an opportunity to respond. See *Jim Tidwell Ford v. Bashuk*, 335 Ga. App. 668, 672-673 (1) (782 SE2d 721) (2016); *Stephens v. Alan V. Mock Constr. Co.*, 302 Ga. App. 280, 284 (1) (b) (690 SE2d 225) (2010). Here, the Third Parties argued their entitlement to an award of expenses under OCGA § 9-11-26 in both their reply brief in the trial court and at the hearing on their sanctions motion. Rialto was therefore aware of the argument and had the opportunity to respond at the hearing.[12]

---

[12] Additionally, if Rialto desired to make a written response to the Third Parties' claim for these expenses, it could have filed a supplemental brief in the trial court and/or filed a motion for reconsideration. The record shows that it did neither.

24

Accordingly, Rialto's appellate argument on this issue cannot serve as a basis for reversing the trial court's award of the expenses associated with the protective order.

(b) Rialto also argues that the Third Parties' failure to seek their expenses either at the time they moved for the protective order or at the hearing on that motion bars them from seeking those expenses by way of a separate motion. As noted above, the statutory scheme put in place by the legislature pursuant to OCGA § 9-11-26 and OCGA § 9-11-37 appears to contemplate that an award of expenses resulting from the pursuit or defense of a motion for a protective order will be considered at the time the trial court decides that motion. See *Bd. of Regents of Univ. System of Ga. v. Ambati*, 299 Ga. App. 804, 811 (4) (a) (685 SE2d 719) (2009) (affirming an award of attorney fees under OCGA § 9-11-37 (a) (4) (A) where the party had requested those fees "in his motion for [a] protective order"); *Hendricks v. Emerson*, 199 Ga. App. 208 (404 SE2d 279) (1991) (affirming an award of attorney fees under OCGA § 9-11-37 (a) (4) (A) where the party requested such fees in his response to a motion for a protective order). In light of the relevant statutory language, we find that a question exists as to whether the Third Parties' failure to request their expenses at the time they sought the protective order bars them from seeking those expenses by way of a separate motion, filed more than 40 days after the protective order was entered. While this question is

25

one of law, it was not addressed by the trial court and it has not been adequately briefed by the parties on appeal. Under the circumstances, therefore, "it seems most appropriate to leave it to the trial court" to consider this question in the first instance. *Deal*, 294 Ga. at 187 (3). See also *Chua v. Johnson*, 336 Ga. App. 298, 307 (2), n. 13 (784 SE2d 449) (2016) (remanding case to the trial court for consideration of a legal issue where the trial court had failed to address that issue and the parties had failed to brief the same on appeal). We therefore vacate that part of the trial court's order awarding the Third Parties the costs and fees incurred in pursuing the protective order and remand for the trial court to consider whether the Third Parties have waived their right to recover such expenses.

For the reasons set forth above, we reverse that part of the trial court's order applying OCGA § 9-15-14 to a post-judgment discovery dispute. We also reverse the award to the Third Parties of their costs and fees associated with preparing for and attending Honey Workman's deposition and in pursuing their sanctions motion. Additionally, we reverse that part of the trial court's order barring Rialto from deposing Honey Workman for a period of five years. We vacate that part of the trial court's order awarding the Third Parties the costs and attorney fees they incurred in obtaining their protective order, and we remand the case for further proceedings on

26

the question of whether the Third Parties have waived their right to recover those expenses.

*Judgment reversed in part, vacated in part, and case remanded with direction.*

*Mercier, J., concurs. Ellington, P. J., concurs in judgment only.*