A93A0503. KILLMASTER v. KILLMASTER.
(430 SE2d 817)

BEASLEY, Presiding Judge.

We granted appellant-former husband's application for discretionary appeal of an order of the superior court finding him in wilful contempt for failure to pay his support obligations under the parties' divorce decree and awarding attorney fees to appellee-former wife.

The parties were divorced in 1989. In pertinent part, their divorce decree, which incorporates an agreement of the parties, requires appellant to pay $542.28 per week in child support, $1,570 per month in alimony, $1,529.70 per month toward the mortgage on the marital residence, and medical expenses for the children not covered by insurance which appellant is also required to maintain.

Appellee instituted the present contempt proceeding in November 1991, alleging that appellant was in wilful contempt of the foregoing provisions of the divorce decree. Appellant answered, admitting some arrearage but stating that his nonpayment was not wilful because he no longer had the ability to make the required payments. The hearing on the contempt petition was deferred pending final disposition of an action filed by appellant for downward modification of his support obligations. The jury in the modification action denied his requests for relief.

The contempt hearing was held on July 15, 1992. Appellee testified that appellant was then in arrears in alimony, child support, and house payments in the total amount of $22,936.36. Appellant testified that his company, Mortgage Lenders, Inc., went out of business in the latter part of June, and he was no longer able to draw a salary since the company's bank account had been frozen. However, the evidence shows that during the first six months of 1992, appellant received $19,536.75 in net salary, withdrew $35,000 in cash accumulated in an IRA, retained $5,000 in proceeds from the sale of his residence (distributing $8,657.60 of the proceeds to appellee and her attorney), and received $2,500 from the sale of a lot, totalling $62,036.75. Yet, documentary evidence submitted by him shows during this period he paid

appellee no more than $11,396.40 (the sum stated by her), in addition to $8,657.60.

The evidence also showed that the IRA from which he withdrew the $35,000 is composed of home mortgages for which appellant is the mortgagee. The unpaid principal balances of these mortgages total approximately $120,000, but their fair market valuation is approximately 50 cents on the dollar. Appellant testified that these mortgages are not marketable and that he tried without success to sell them. He later admitted that he could "pull out [of the IRA account] today to satisfy support obligations," although "there would be hardly anything left" after he paid a ten percent penalty and taxes. He also testified that he has approximately $10,000 to $15,000 equity in properties he is trying to sell, as well as interests of undetermined value in various real estate projects.

On August 10, the trial court entered an order finding that appellant's failure to pay the sums testified to by appellee constituted wilful contempt.

The court "ORDERED that the Defendant shall be allowed to purge himself of his contempt by payment to the Plaintiff of the sum of $22,936.36 to the Plaintiff within sixty (60) days from the date of this Order. Said sum shall be in addition to the regular child support and alimony payments ordered by this Court, and any payments made by the Defendant to the Plaintiff shall first be applied to child support and alimony payable subsequent to July 15, 1992.

"In the event Defendant fails to comply with the direction of this Order, and fails to purge himself by payment of $22,936.36, plus alimony and child support accruing up to the time of such payment, as herein provided, the Court shall issue its Order directing the incarceration of the Defendant upon the Plaintiff's application accompanied by her Affidavit that the Defendant has failed to comply with the provisions of this Order."

1. Appellant contends that the trial court erred in holding him in contempt when the evidence showed that he had lost his job and had no employment prospects or readily marketable assets with which to satisfy his obligations.

This contention is without merit. The evidence authorized the court to find that appellant had the ability to pay the arrearage when due; and that he has the ability, at least through the sale of property, to pay the arrearage as well as sums coming due within the 60-day period after entry of the contempt order.

2. In reliance upon *Mitchell v. Koopu*, 242 Ga. 506 (249 SE2d 210) (1978); *Roehl v. O'Keefe*, 243 Ga. 696 (3) (256 SE2d 375) (1979); and *Hawkes v. Hawkes*, 248 Ga. 772 (285 SE2d 728) (1982), appellant contends that the trial court erred in the part of its order directing his incarceration upon appellee's application accompanied by her affi-

davit that he has failed to comply with the provisions of the order. In reliance upon *Davis v. Davis*, 138 Ga. 8 (74 SE 830) (1912), he contends that the trial court erred in ordering his incarceration without notice or hearing for nonpayment of future child support and alimony. In reliance upon *Floyd v. Floyd*, 247 Ga. 551 (277 SE2d 658) (1981), he argues that he is entitled to a hearing as to whether he violates the contempt order.

(a) In *Davis*, the trial court held the husband in contempt for failure to pay temporary alimony and ordered his incarceration if he failed to make prompt payment of future sums. The Supreme Court held that the trial court erred in holding the husband in contempt, in that it was uncontradicted that he was unable to raise money to make the alimony payments by loan, sale of property, or otherwise; he tendered to the sheriff sufficient property to pay the required sum; and it was sold for that purpose. The Court also held that it was error for the trial court to order the husband incarcerated for failure to make future payments before holding a contempt hearing. 138 Ga. at 8 (1d).

In *Swanson v. Douglas*, 150 Ga. 650 (105 SE 161) (1920), after the defendant failed to respond to a rule nisi, the superior court held him in contempt for failure to comply with a decree of specific performance of a contract for the sale of land and directed that he be arrested by the sheriff if he did not comply with the decree within ten days. The Supreme Court held that "even if the failure to comply with the order and decree of the court is a contempt subjecting the defendant to imprisonment in the common jail, the court itself should have definitely fixed its requirements and the time within which the order of the court must be performed, and, at the expiration of that time, have passed an order adjudging whether or not the defendant was actually in contempt, and should not have left the determination of those questions to the sheriff of the county." 150 Ga. at 650 (3).

In *Foster v. Foster*, 178 Ga. 791, 792 (5) (174 SE 532) (1934), at a temporary alimony hearing, the superior court ordered the husband to make payments instanter or be placed in jail for contempt. The Supreme Court reversed, citing *Davis* and *Swanson*.

In *Mitchell v. Koopu*, supra, a child support judgment contained a self-effectuating contempt order, as in *Foster*. The order contained the additional provision that the former husband would be incarcerated upon affidavit of the wife that he had failed to make the required payments. The Supreme Court reversed the superior court's denial of the former husband's motion to set it aside. Citing *Foster*, the Court held that "[t]his language provides for the incarceration of the appellant without any notice or hearing and is unconstitutional." 242 Ga. at 506 (1).

In *Roehl v. O'Keefe*, supra, the superior court held the former wife in contempt for failing to comply with child visitation rights

awarded her former husband. The contempt order also provided that if the former wife did not permit the former husband to visit his son, upon affidavit of the former husband approved by the court the sheriff would be directed to incarcerate her. Citing *Mitchell* and *Foster*, the Supreme Court held that provision unconstitutional because it violated due process and struck it from the judgment.

In *Floyd v. Floyd*, supra, the superior court held the father in contempt for failure to pay alimony, child support, and attorney fees previously awarded to the mother. The court ordered him committed to jail provided that he could purge himself of contempt by paying the required sums to the sheriff on or before a specified date and time, which was three days after entry of the contempt order; upon his failure to do this, the court directed the sheriff to incarcerate him.

The Supreme Court affirmed. The court distinguished *Mitchell* as involving an order that "placed the keys to the jail in the opposing party's hand in that there was no mechanism provided whereby an officer of the court would possess objective information as to whether the order at issue had been complied with. See *Roehl v. O'Keefe*, [supra]. The order in *Swanson v. Douglas*, supra, 150 Ga. 650, was subject to the same defect.

"Here we have quite a distinct situation: The order complained of did not relate to future payments; it related to payments adjudicated as being owed. The order did not put the keys to the jail in the opposing party's hand; whether payment was made or not made was to be determined by the sheriff by payment or nonpayment to him. The father had a hearing and was adjudged in contempt. Few litigants claiming inability to pay are likely to appear in court with sufficient funds in hand to enable them to pay contempt orders instanter. And many litigants would be unable to satisfy contempt orders if they were incarcerated immediately following the hearing; in order to purge oneself, property may have to be sold or pledged, or payday awaited. For practical reasons, the trial court gave the defendant three days to purge himself on the contempt by making the payment to the sheriff of sums adjudicated due. We hold that this procedure does not deny the father due process." 247 Ga. at 553-554.

In *Hawkes v. Hawkes*, supra, the Supreme Court, quoting *Floyd* and citing *Roehl* and *Mitchell*, agreed with the husband that a contempt order authorizing his incarceration if he did not pay the required sums to his wife deprived him of due process of law by divesting the court of supervision over whether he had purged himself of contempt. "This omission may be cured by amendment to the trial court's order." Id. at 773.

(b) The present case is distinguishable from *Davis* in that there has been a contempt hearing after which the trial court determined that appellant has the ability to pay the arrearage and sums coming

due by the time he purges himself of contempt within 60 days of entry of the contempt order. Neither *Davis* nor the other cases prohibit such an order.

However, the provision in the order permitting appellant's incarceration based solely upon appellee's application accompanied by her affidavit is unauthorized under *Mitchell* and *Roehl*, as well as *Swanson*. This is particularly so under the present record, which indicates that appellant will have to sell or assign his interests in real or intangible property in order to meet his support obligations. If after making diligent effort he is unable to accomplish that within the required period, he may well have to transfer his property interests to appellee rather than pay her cash in order to purge himself of contempt.

3. Appellant contends that the trial court erred in awarding $687.50 in attorney fees to appellee.

This contention is without merit. We find no abuse of discretion. See OCGA § 19-6-2 (a) (1); *McDonogh v. O'Connor*, 260 Ga. 849 (400 SE2d 310) (1991); compare *Waller v. Waller*, 237 Ga. 336, 337 (2) (227 SE2d 374) (1976). The divorce decree also authorized such an award.

*Judgment affirmed in part and reversed in part. McMurray, P. J., and Cooper, J., concur.*

DECIDED APRIL 5, 1993.

*Land, McKnight, Newlin & Cohen, Barbara E. Keon,* for appellant.

*Wood, Odom & Edge, Gus L. Wood III,* for appellee.