**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 27, 2017**

# In the Court of Appeals of Georgia

A17A0918. SAMPSON v. CURETON.

A17A1070. SAMPSON v. CURETON.

BARNES, Presiding Judge.

Joey Sampson, who was joined as a party-defendant in a divorce action, contests in these related appeals the viability of judgments that collectively: (i) found him liable for money damages for a vehicle of one of the divorcing spouses; (ii) held him in contempt; (iii) ordered him to pay attorney fees; and (iv) permitted garnishment of his funds. For reasons that follow, we reverse the judgments in both cases; we further remand Case No. A17A0918 for proceedings not inconsistent with this opinion.

During divorce proceedings between James Cureton (Husband) and Jennifer Cureton (Wife), Husband cross-claimed that Wife had wrongfully sold certain of his personal property, including a 1954 Chevrolet Bel Air vehicle. Husband identified the individuals he believed had purchased his belongings, and made prayer for either the

return of his items, or "[i]n the event said items are no longer available, said third party defendants should be required to pay the fair market value." Additionally, Husband filed a motion seeking to add as party-defendants to his cross-claim those persons he believed had obtained his property, eventually naming Sampson as the individual who had received the vehicle.

The court conducted a hearing on Husband's motion, and Sampson appeared pro se. Thereafter, on August 16, 2011, the court entered an order joining the identified persons. Pertinent to Sampson, the court found that Wife had indeed sold the vehicle to him and that, without Sampson added as a party, "complete relief cannot be afforded to [Husband]." The court reserved for subsequent determination issues of whether the vehicle was marital or separate property, whether Wife had held any ownership interest in the vehicle when she sold it, and whether the sale of the vehicle was valid and to a bona fide purchaser. Thereupon, the court ordered that all added parties were "enjoined from selling . . . or otherwise disposing of said property until further Order."

Several years later, a rule nisi was issued in the divorce action, identifying Sampson as a joined party-defendant and scheduling for March 12, 2015 a hearing to show why the court should not grant Husband's prayers:

2

that each and every sale of the property of [Husband] and the property of this marriage be set aside, declared null and void, and all property be returned to [Husband] or in the event these items are no longer retrievable, the [joined party-defendants] be required to pay an amount equivalent to the fair market value of each and every item of [Husband].

Service of the rule nisi was attempted upon Sampson at his residence, but he refused to accept any document; the rule nisi was left at Sampson's door. Sampson was neither present nor represented by counsel at the evidentiary hearing held as scheduled. Thereafter, on May 14, 2015, the superior court entered an "Order and Judgment in Resolution of Claims Outside The Domestic Case," determining that the vehicle was *not* marital property, but "the individual property of [Husband]."

In that order, the court additionally found that Sampson was not a bona fide purchaser for value, declared Wife's sale of the vehicle to Sampson void, and directed the sheriff to accompany Husband to Sampson's residence to retrieve the vehicle. The court went on to provide in its order that if the vehicle is not returned to Husband's possession within 48 hours of an attempted retrieval, "[Husband] may immediately petition this court for a citation of contempt on . . . Sampson, and petition for a hearing for a monetary judgment against . . . [Sampson] in the amount of the fair market value

of the car, as testified to at the March [12], 2015 hearing, and all associated cost and attorney fees."

In July 2015, Husband returned to superior court and filed two motions. In a "Motion to Clarify Order and Judgment In Resolution of Claims Outside the Domestic Case," Husband alleged that he had been unable to retrieve the vehicle because Sampson had sold it on eBay. Husband posited,

> While [Husband] would assert that Sampson is clearly in willful contempt of this Court's August 16, 2011 Order [joining party-defendants to the divorce action and enjoining those parties from selling or otherwise disposing of certain items], he would also assert that the evidence in this case is closed and that the Court can determine [Husband's] damages without the necessity of any additional court hearings.

Thus reciting evidence presented at the March 12, 2015 hearing regarding the fair market value of the vehicle, Husband requested that judgment be entered in his favor for "the fair market value of the vehicle, which are the damages of [Husband]."

In a second motion filed that same day, captioned "Motion for Citation of Contempt and Expenses of Litigation," Husband specifically requested that Sampson be held in contempt for failing to comply with two orders: (i) the August 16, 2011 order, enjoining the added party-defendants from selling or otherwise disposing of

4

certain items, including the vehicle; and (ii) the May 14, 2015 order, mandating the return of the vehicle to Husband's possession. Additionally, Husband claimed that Sampson owed him attorney fees under OCGA § 13-6-11 "for having to pursue this action."

The superior court granted Husband's motions. In an order entered August 7, 2015 (hereinafter, "Money Damages Judgment"), the superior court ruled,

> This Court finds that the evidence is closed in this matter, as a result of the final hearing held on March 12, 2015. [Husband] has shown . . . that . . . Sampson has not produced the 1954 Chevrolet Bel Air "vehicle" within 48 hours of this Court's May 14, 2015 Order. As such, the defendant is entitled to money damages as proven at the final hearing . . . for the value of the 1954 Chevrolet Bel Air "vehicle" . . . in the amount of $44,550.00.

In an order entered August 20, 2015 (hereinafter, "Contempt Judgment"), the superior court held Sampson in contempt of the two orders cited by Husband. The court found further that Sampson had acted in bad faith, been stubbornly litigious, and caused Husband unnecessary trouble and expense. The court then ruled that Sampson could purge himself of the contempt by satisfying the $44,550.00 money judgment and additionally paying to Husband $6,746.25 for his incurred attorney fees.

5

With those favorable judgments, Husband commenced in the same superior court a separate garnishment action, pursuant to which funds were transferred from Sampson's bank account into the court's registry. Meanwhile, Sampson obtained counsel. In the divorce action, Sampson filed in November 2015 a motion to set aside the Money Damages Judgment and the Contempt Judgment. Among the arguments advanced, Sampson claimed that he was never properly served with various pleadings and orders (such as the order adding him as a party-defendant), and that a judgment for damages against him as a party-defendant joined in a divorce action was impermissible as a matter of law. In the garnishment action, Sampson filed a traverse, citing his challenges to the underlying two judgments.

Opposing Sampson's motion to vacate the judgments entered in the divorce action, Husband cited that OCGA § 9-11-60 (d) permits a judgment to be set aside on three grounds, then argued that Sampson had failed to establish any of the bases. In the garnishment action, Husband maintained the validity of the underlying judgments.

In both cases, the superior court ruled against Sampson, and in favor of Husband – denying Sampson's motion to set aside, denying his traverse, and ordering that monies collected in the garnishment action be disbursed from the court's registry to

6

Husband. Contesting these rulings, Sampson filed discretionary applications,[1] which this Court granted, giving rise to the instant appeals. We consider first Case No. A17A1070, wherein Sampson challenges the denial of his motion to set aside the Money Damages Judgment and the Contempt Judgment entered in the divorce action. We consider next Case No. A17A0918, wherein Sampson challenges the garnishment.

*Case No. A17A1070*

1. *Money Damages Judgment.* Advancing multiple arguments, Sampson contends that the superior court erred by refusing to set aside the judgment holding him liable for money damages for Husband's vehicle.

(a) Relying on *Shah v. Shah*, 270 Ga. 649 (513 SE2d 730) (1999), Sampson argues that damages were impermissibly granted within the context of a divorce action. In *Shah*, the Supreme Court of Georgia addressed the authority of a trial court to join a third party, who was the grantee of disputed property. Id. at 650 (1) The Court held that a third party could be joined

> as a party to the divorce action only for the *limited purpose* of determining [the third party's] relative substantive right in the property that [one of the divorcing spouses] claimed was fraudulently conveyed to

---

[1] Sampson filed one of the applications in the Supreme Court of Georgia, but that Court transferred his application to this Court.

7

[that third party]. [Such divorcing spouse] could not use the fraudulent conveyance claim and the joinder of [the third party] in order to make an independent tort claim against him. In the absence of any applicable joinder provision,[2] that claim would have to be asserted against [the third party] in a separate civil action.

(Citation omitted; emphasis supplied.) Id. at 651 (1). "A contrary holding," the Supreme Court reasoned, "would mean that every divorce action in which a fraudulent conveyance claim has been joined would become the potential source of innumerable independent extraneous claims, counterclaims, and cross-claims between non-parties to the original proceeding." Id. Thus, in *Shah*, the Court concluded that it was error to allow a recovery of damages from the third party joined in that divorce action. Id.

In the instant divorce action, Husband accused Wife of wrongfully selling his vehicle to Sampson, then obtained an order joining Sampson as a party-defendant on such cross-claim. The superior court determined that neither Wife nor Sampson had any right to the vehicle and that it belonged solely to Husband. With those favorable rulings, Husband pursued relief against Sampson on his cross-claim – Husband

---

[2] In *Shah*, the joinder provision invoked was OCGA § 9-11-18 (b). *Shah*, 270 Ga. at 650-651 (1). Husband has made no claim that he relied upon any other joinder provision.

8

procured an order directing Sampson to return his vehicle to his possession; and when it became apparent that retrieving his vehicle was not attainable, Husband sought and was granted money damages for the value of the vehicle. But in light of *Shah*, we conclude that the Money Damages Judgment was impermissible because it exceeded the "only . . . limited purpose" for which Sampson was joined in the divorce action. *Shah*, 270 Ga. at 651 (1).

(i) In so concluding, we are unconvinced by Husband's arguments that the Money Damages Judgment should nevertheless stand. Husband points out that Sampson appeared at the initial hearing on the motion to add parties, asserting further that Sampson could have – but did not – file any defensive pleadings or otherwise participate in the case until *after* the Money Damages Judgment was rendered. In essence, Husband contends that the superior court was authorized to enter a default judgment against Sampson in the divorce action based upon his non-participation in the case. But to the extent that the Money Damages Judgment is akin to a default judgment, holding Sampson liable for the fair market value of the vehicle was impermissible as beyond the scope of the "only . . . limited purpose" for which Sampson was joined to the divorce action. *Shah*, 270 Ga. 651 (1). Accord *Brown v. Brown*, 271 Ga. 887, 887-888 (525 SE2d 359) (2000) (reversing default judgment on

9

equitable claim pursued by divorcing spouse against third-party defendant in a divorce action, because "a default judgment cannot be entered against the defendant on such a claim").

(ii) Husband cites *Huling v. Huling*, 289 Ga. 55 (707 SE2d 86) (2011), where our Supreme Court upheld a judgment against third parties who had been joined in a divorce action. Id. at 56. But the record in *Huling* made clear that the third parties had "induced and expressly acquiesced in the allegedly erroneous judgment." Id. at 57. No such circumstances appear here.

(iii) As set forth above, Husband asserted before the superior court that Sampson's motion to set aside was governed by OCGA § 9-11-60 (d), then argued that Sampson had failed to establish any of the designated grounds.[3] However, paragraph (d) (3) states that a judgment is properly set aside upon a showing of "[a] nonamendable defect which appears upon the face of the record or pleadings. Under this paragraph, it is not sufficient that the complaint or other pleading fails to state a claim upon which relief can be granted, but the pleadings must affirmatively show no

---

[3] See *Abushmais v. Erby*, 282 Ga. 619, 621 (2) (652 SE2d 549) (2007) ("OCGA § 9-11-60 provides the sole means of attacking a judgment.") (citation and punctuation omitted); *Unigard Ins. Co. v. Kemp*, 141 Ga. App. 698, 700 (3) (234 SE2d 539) (1977) (concerning collateral attacks upon judgments).

claim in fact existed."[4] As the face of the record here confirms, Husband alleged that Wife had wrongfully sold his vehicle to Sampson, then obtained an order joining Sampson as a third party to the divorce action. Although Sampson was permissibly joined "for the limited purpose of determining [Sampson's] relative substantive right in the [vehicle], . . . [Husband] could not use the fraudulent conveyance claim and the joinder of [Sampson] in order to make an independent tort claim against him." *Shah*, 270 Ga. at 651 (1). Because no valid claim for damages existed against Sampson, the reliefgranted to Husband lacked a proper basis. Id. at 651 (2) (summarizing that "damages against the grantee [of disputed property] can be recovered only in a separate action, and *a money judgment against him can never be entered in the divorce proceeding*") (emphasis supplied). Because the Money Damages Judgment thus fell within the ambit of OCGA § 9-11-60 (d) (3), the superior court abused its discretion in refusing to set it aside.[5] See *Shah*, 270 Ga. at 651 (1); see also *Shields v. Gish*, 280

---

[4] Although when pursuing his motion to vacate, Sampson did not explicitly cite OCGA § 9-11-60 (d) (3) nor use the term "nonamendable defect," he sufficiently raised the key issues before the superior court. See *Hiner Transp. v. Jeter*, 293 Ga. App. 704, 706 (667 SE2d 919) (2008).

[5] See *Stamey v. Policemen's Pension Fund Bd. of Trustees*, 289 Ga. 503, 504 (1) (712 SE2d 825) (2011) (reiterating that a ruling upon a motion to set aside is reviewed for abuse of discretion).

11

Ga. 556, 558 (2) (629 SE2d 244) (2006) ("Where . . . the record shows on its face that the default [judgment] was entered on an improper basis, there is a nonamendable defect on the face of the record."); *Brown*, 271 Ga. 887-888. Accord *Fulton v. State of Ga.*, 183 Ga. App. 570, 572-573 (359 SE2d 726) (1987) (a nonamendable defect appeared on the face of the record where court granted default judgment based upon misapplication of a superior court rule). The denial of Sampson's motion to vacate, as it pertained to the Money Damages Judgment, is reversed.

(b) It is unnecessary to consider Sampson's remaining arguments challenging the denial of his motion to set aside the Money Damages Judgment. See *Lovett v. Zeigler*, 224 Ga. 144, 145 (160 SE2d 360) (1968).

2. *Contempt Judgment*. Sampson contends that, given *Shah*'s holding, the superior court erred by holding him in contempt and ordering that he could purge himself therefrom by paying Husband the fair market value of the vehicle, together with the attorney fees incurred. We agree.

When the superior court ruled in its May 14, 2015 order that Sampson had no ownership in the vehicle, it thereby effected "the limited purpose of determining [Sampson's] relative substantive right in the property that [Husband] claimed was fraudulently conveyed to [Sampson]." *Shah*, 270 Ga. 657 (1). Nevertheless, when

12

Husband thereafter ascertained that his vehicle could not be recovered from Sampson, Husband procured from the trial court an order holding Sampson in contempt from which he could purge himself *by paying Husband the fair market value of the vehicle, plus attorney fees*.

Notably, in his brief to this court, Husband characterizes the Contempt Judgment as "compensatory contempt in the form of a money award." As Husband explains,

> Compensatory contempt was awarded because the damages benefitted [Husband] directly rather than the State. The purpose of compensatory contempt is to restore the victim as nearly as possible to his original position which is exactly what the trial court did in this case. By awarding [Husband] the value of the vehicle, after the vehicle was not returned pursuant to the [c]ourt's order to do so, *the court attempted to restore [Husband] to his original position*. The same argument applies to the attorney fees that were awarded.

Restoring Husband to his original position within the context of the divorce action ran afoul of *Shah*. 270 Ga. at 651 (1). "Nothing in the Civil Practice Act . . . authorizes the conversion of a divorce case into . . . a multifarious and unfocused proceeding." Id. Moreover, as a general rule, "a money judgment may be enforced only by execution thereon, *not* by contempt proceedings." *McKenna v. Gray*, 263 Ga. 753, 755 (438 SE2d 901) (1994) (emphasis supplied); see *Shelley v. Shelley*, 212 Ga. App.

13

651, 652 (442 SE2d 847) (1994) (explaining that an action for contempt is not an available remedy to enforce a money judgment); *London v London*, 149 Ga. App. 805, 807 (1) (256 SE2d 33) (1979) (reciting that the refusal or failure to pay money judgment does not amount to contempt of court, and imprisonment for such failure would be imprisonment for debt).

Furthermore, superior courts do not have authority to require the payment of attorney fees as punishment for contempt. See *DeKalb County v. Bolick*, 249 Ga. 843, 844-845 (2) (295 SE2d 92) (1982). And given our decision in Division 1 (a), supra, OCGA § 13-6-11 provided no basis for an attorney fees award. See *Steele v. Russell*, 262 Ga. 651, 651-652 (2) (424 SE2d 272) (1993) (explaining that fees and expenses recoverable pursuant to OCGA § 13-6-11 are "ancillary and may only be recovered where other elements of damage are also recoverable"); *Brown v. Baker*, 197 Ga. App. 466, 467 (2) (398 SE2d 797) (1990) ("OCGA § 13-6-11 does not create an independent cause of action."). Husband has misplaced his reliance upon *Minor v. Minor*, 257 Ga. 706 (362 SE2d 208) (1987), which affirmed in a domestic relations case attorney fees awarded pursuant to OCGA § 9-15-14, while reiterating that "[n]o authority exists to award attorney fees merely because the action is for contempt." Id. at 709 (2).

Given the foregoing, we reverse the denial of Sampson's motion to vacate the Contempt Judgment.

*Case No. A17A0918*

3. In this garnishment action, Sampson contends that the superior court erred by denying his traverse.

Husband initiated garnishment proceedings against Sampson relying on the Money Damages Judgment and the Contempt Judgment. Given Divisions 1 and 2, supra, we reverse the judgment entered against Sampson in the garnishment action. *Euler-Siac S.P.A. v. Drama Marble Co.*, 274 Ga. App. 252, 256 (2) (617 SE2d 203) (2005) (explaining that essential to garnishment is "a valid existing judgment between the plaintiff and defendant in the prior action") (citation and punctuation omitted). This case is remanded for proceedings not inconsistent with this opinion.

*Judgment reversed in Case No. A17A0918 and case remanded; judgment reversed in Case No. A17A1070. McMillian and Mercier, JJ., concur.*