**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 26, 2026

# In the Court of Appeals of Georgia

A26A1108. MARTIN v. GRIFFITH.

HODGES, Judge.

Quintez Martin, acting pro se, appeals a trial court order holding him in contempt for failing to pay his ex-wife, Candace Griffith, child support and ordering his incarceration until he purged his contempt. He asserts various enumerations of error related to the contempt ruling. For the reasons that follow, we affirm the trial court's findings that Martin's failure to pay child support was willful and that he had a present ability to pay the purge amount. However, we vacate the contempt order based on an improper self-executing arrest provision, vacate the trial court's award of attorney fees to Griffith, and remand the case for the court to enter a new contempt order that remedies the deficiencies addressed in this opinion.

Generally, we will not disturb an order of civil contempt supported by at least some evidence absent an abuse of discretion by the trial court. *Rocker v. First Bank of Dalton*, 343 Ga. App. 501 (806 SE2d 884) (2017). "Such an abuse of discretion occurs where the trial court either fails to apply or misapplies the relevant law." Id. "Additionally, to the extent that the question of the validity of a contempt order involves a question of law, we review that question de novo." Id. at 502.

So viewed, the record shows the following facts relevant to this appeal. The parties were never married but share a minor child who was born in 2021. On October 13, 2022, a Tennessee juvenile court entered an "Agreed Final Order Adopting Permanent Parenting Plan" for the minor child. Under the parenting plan, the parties shared custody, with Griffith having 245 days and Martin having 120 days. Martin was ordered to pay child support in the amount of $188 per month, plus an additional $25 per month toward arrearage repayment from the time the parties separated. Griffith subsequently moved to Georgia with the child in February 2023.

In July 2024, Griffith filed a petition in the Superior Court of Whitfield County, Georgia, to domesticate the Tennessee judgment, modify the parenting plan, and set child support. Martin was served in Tennessee and filed a special appearance and

answer. The Whitfield County court determined that it had jurisdiction over the action because the Tennessee court relinquished jurisdiction to Whitfield County. The parties consented to an interim order, which included making "a good faith effort to agree on a child support obligation within Georgia's [c]hild [s]upport [g]uidelines" to begin in March 2025. Martin later filed a Domestic Relations Financial Affidavit, asserting his gross monthly income was $1,312.81. The court, however, issued a temporary order on May 27, 2025, finding that Martin was "artificially suppress[ing] his income through voluntar[]y underemploy[ment]" and ordering Martin to pay $624 per month in child support and an arrearage amount of $1,399.50 within 120 days of the court order.

Following a subsequent hearing, the court entered a final order on July 9, 2025, finding again that Martin had artificially suppressed his income and "is physically and mentally fit to earn significantly more income than he has apparently been earning." After listing the parties' incomes, adjustments, and deviations, the trial court ordered Martin to pay $585.00 per month in child support. The court further found that Martin owed $2,547.10 in arrearage amounts as ordered during the pendency of the case, that he had no legal excuse for failing to pay the amounts ordered by the court,

that his failure to pay was willful, and that he should be held in contempt. The court specifically noted in its order:

> To purge himself of contempt, [Martin] shall repay such amount to [Griffith] at the rate of $100.00 per month, in addition to that amount of child support currently ordered to be paid. Should [Martin] elect to make weekly payments on this arrearage, he shall pay $22.99 per week.

Thereafter, on September 15, 2025, Griffith filed a motion for contempt, asserting that Martin had "willfully failed to abide by the previous [c]ourt [o]rder" and had no legal excuse for doing so. The trial court held a hearing in which evidence was presented and issued a contempt order on November 7, 2025, concluding that, despite its previous contempt finding and order to pay, "[i]nstead of paying down that arrearage, ... [Martin] ha[d] fallen further behind on his child support obligation[,]" had only paid $60.00 toward child support since its contempt finding on July 9, 2025, and owed $4,235.34 in arrearage as of October 13, 2025. The court again concluded that Martin had shown no legal excuse for failing to pay the previously ordered child support and that his failure to pay was willful. The court found Martin in contempt and ordered as follows:

4

[Martin] is hereby ordered to be incarcerated by the Sheriff of Whitfield County until such time as he shall pay $500.00 towards his child support obligation through the Whitfield County Clerk of Court's Office. He shall then pay an additional $500.00 with[in] 30 days of his release from custody toward his child support obligation through the Whitfield County Clerk of Court's Office. He shall also pay an additional $100.00 per month, or $22.99 per week, from that point forward until such time as his arrearage is paid in full. All of these payments shall be in addition to his current child support amount of $585.00 per month or $134.48 per week. All such child support payments shall be made through the Whitfield County Clerk of Court's Office, together with any fees charged by said office.

The court order specifically stated:

In the event [Martin] fails to make the payments outlined … above in a timely manner, this Order shall be self-executing, and upon presentation of a certified pay record or other sufficient proof that [Martin] has failed to make any of the required payments pursuant to this Order, an immediate Arrest Order will be issued requiring [Martin] to be immediately incarcerated in the common jail of Whitfield County, Georgia.

In addition, the court ordered Martin to reimburse Griffith $1,000.00 in legal fees she incurred in bringing the contempt action within 90 days of October 13, 2025.

Martin asserts that he was incarcerated overnight following the trial court's hearing and before the November 7 contempt order and that he was released after paying $502.00. Martin purportedly was arrested again on November 26, 2025, and remained in jail until his father paid $502.00 on December 1, 2025.

On December 5, 2025, Martin filed an application for discretionary review from the November 7, 2025 domestic relations contempt order, raising three enumerations of error. He subsequently filed a supplemental application on December 16, 2025, raising an additional enumeration of error. This Court granted Martin's application to thoroughly review the case with the complete record. *Martin v. Griffith*, Case No. A26D0242 (granted Dec. 29, 2025).

1. We note at the outset that Martin's pro se appellate brief lists 11 enumerations of error.[1] Martin, however, only raised four of the arguments in his

[1] Martin's enumerations of error include the following: (1) his November 26, 2025 arrest was illegal; (2) the trial court lacked personal jurisdiction over him; (3) his incarceration prior to the expiration of the purge grace period was premature; (4) the trial court erred by issuing a self-executing order; (5) the trial court erred in finding he willfully failed to pay child support because he relied in good faith on a parental agreement; (6) the trial court abused its discretion in finding he willfully failed to pay child support; (7) the trial court's order contained an impossible purge condition; (8) his incarceration without a jury trial violated OCGA § 15-1-4(b); (9) the court erred in awarding attorney fees without proper findings; (10) the trial court erred in failing to impose sanctions against Griffith and her attorney for bad faith litigation; and (11)

application for discretionary appeal.[2] See *Martin*, Case No. A26D0242. As a result, the remaining issues raised in Martin's appellate brief are not properly before us for review. See *Zekser v. Zekser*, 293 Ga. 366, 369(2) (744 SE2d 698) (2013) ("An application for discretionary review must enumerate the errors to be urged on appeal, and so, when we grant discretionary review, it necessarily is limited to the errors actually enumerated in the application.") (citation and punctuation omitted). See also *Lutz v. Lutz*, 302 Ga. 500, 502(1) (807 SE2d 336) (2017) (holding that when a party did not raise an issue in his application for discretionary review, the issue was not properly before the appellate court for review); *Bernard v. Bernard*, 347 Ga. App. 429, 431(1) (819 SE2d 688) (2018) (holding that when a party did not raise a claim of error in his application, this Court could not consider it). Accordingly, we will not consider

---

the trial court erred by modifying the permanent parenting plan to reduce his parenting time.

[2] These arguments included the following: (1) the trial court erred by including a self-executing arrest provision in its contempt order; (2) the trial court abused its discretion by finding his failure to pay child support was willful because the evidence showed he had a financial hardship and he made good faith payments; (3) the trial court abused its discretion in ordering him incarcerated without considering his inability to pay the purge amount; and (4) the court erred in awarding attorney fees to Griffith.

on appeal the arguments not raised by Martin in his application for discretionary appeal.

2. Martin asserts, as he did in his discretionary application, that the trial court abused its discretion by finding that his failure to pay child support was willful. Specifically, Martin argues that the court's findings were based on clear factual errors and contradicted by its finding that Martin is indigent.[3] Martin's arguments fail for a number of reasons.

It is well settled that "[a] party who has failed to pay support under a court order when he has the ability to pay may be found guilty of civil or criminal contempt and incarcerated under either. When the trial court orders incarceration for an indefinite period until the performance of a specified act, the contempt is civil." *Wright v. Wright*, 367 Ga. App. 15 (884 SE2d 610) (2023) (citation and punctuation omitted). "The essence of civil contempt involved in a proceeding to enforce child

---

[3] On appeal, Martin also argues that the trial court erred in finding willfulness because he relied in good faith on a notarized parental agreement and a Tennessee court order. This issue was not raised in Martin's application and, therefore, is not properly before us. *Zekser*, 293 Ga. at 369(2).

support is willful disobedience of a prior court order." *Pate v. Pate*, 280 Ga. 796, 798(3) (631 SE2d 103) (2006).

> The burden ... is on the one refusing to pay to show that he has in good faith exhausted all of the resources at his command and has made a diligent and bona fide effort to comply with the decree awarding alimony or child support. The contempt question, including any factual issues as to the former husband's ability to pay, is for the trial court to determine, and that court's adjudication will not be reversed on appeal unless there has been an abuse of discretion.

*Wright*, 367 Ga. App. at 18-19(1) (citation and punctuation omitted). "If there is any evidence in the record to support the trial judge's determination that a party has willfully disobeyed a trial court's order, the decision of the trial court will be affirmed on appeal." *Pate*, 280 Ga. at 798(3).

To begin our review in this case, we note that the trial court's contempt order indicates it was issued following a "hearing in which evidence was taken[.]" Yet Martin's notice of appeal specifically states that "[a] transcript of evidence and proceedings will not be filed for inclusion in the record on appeal." Martin, as the appellant, has the burden of showing error affirmatively by the record. *Huff v. Vallejo*, 347 Ga. App. 127, 130 (817 SE2d 696) (2018). The record before us, however, fails to

include a transcript of the contempt hearing — wherein evidence was presented — or a re-creation of a transcript under OCGA § 5-6-41.

> Because this appeal draws into question the transcript of the proceedings, it was [Martin's] duty to have the transcript prepared so that it could be included in the record. See OCGA § 5-6-41(c). Because [Martin] failed to attach the transcript of the hearing, it is not possible for this Court to determine whether this issue was properly preserved. In the absence of a transcript of a hearing, we must presume that the evidence supports the trial court's findings.

*Gallemore v. White*, 303 Ga. 209, 210(1) (811 SE2d 315) (2018) (punctuation omitted). See also *Jones v. Foster*, 287 Ga. 144 (695 SE2d 21) (2010) ("A trial court's ruling on a motion for contempt will be affirmed on appeal if there is any evidence in the record to support it. Moreover, in the absence of a transcript of the hearing on such motion, we must presume that the evidence supports the trial court's findings.") (citation omitted); *Kerr v. Wilson*, 359 Ga. App. 111, 114(3) (854 SE2d 777) (2021) (affirming trial court's contempt finding because the father failed to include a transcript of the contempt proceeding and therefore did not demonstrate error in the record). Accordingly, in the absence of a transcript of the hearing, we are required to assume

that the trial court was authorized to find that Martin was in willful contempt for refusing to pay his court-ordered child support.

This is especially true given Martin's arguments and assertions in his appellate brief. For example, Martin claims in his appellate brief that he testified at the contempt hearing that he had applied for 23 jobs. However, his failure to include a transcript of the contempt hearing forecloses any argument regarding facts presented at the hearing. We must assume that the trial court properly found, as noted in its order, that although Martin made "some efforts to find another job," such efforts were insufficient and Martin's failure to pay child support was willful. In addition, we must assume that evidence supported the trial court's imputation of income due to Martin artificially suppressing his income under OCGA § 19-6-15(f)(4)(D).[4] See

---

[4] OCGA § 19-6-15(f)(4)(D) provides: "In determining whether a parent is willfully or voluntarily unemployed or underemployed, the court or the jury shall ascertain the reasons for the parent's occupational choices and assess the reasonableness of these choices in light of the parent's responsibility to support his or her child and whether such choices benefit the child." Moreover, "[i]n determining willful or voluntary unemployment or underemployment, the court or the jury may examine whether there is a substantial likelihood that the parent could, with reasonable effort, apply his or her education, skills, or training to produce income." OCGA § 19-6-15(f)(4)(D). Moreover, to the extent that Martin is arguing about the trial court's child support calculations on May 28, 2025, these calculations were used in the trial court's final order on July 9, 2025, and Martin did not appeal that order. Accordingly, any portion of this appeal challenging the July 9, 2025 final order is not

*Friday v. Friday*, 294 Ga. 687, 689 (755 SE2d 707) (2014) ("[T]he trial court is empowered to impute income for willful or voluntary unemployment or underemployment.").

In addition to failing to provide a transcript of the contempt hearing, Martin has abandoned most, if not all, of his claims regarding his willfulness in failing to pay court-ordered child support because he has failed to cite to the record, provide citations of relevant authority, or present meaningful legal analysis of the specific factual scenario before this Court. See Court of Appeals Rules 25(a)(5),(7) ("At a minimum, the appellant's brief must include ... appropriate citations to the record ... [and] authorities relied on[.]"); 25(d)(1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."). For example, Martin argues that the trial court's finding that he had only paid $60.00 "towards this child support obligation since July 9, 2025," when the court ordered him to pay specific amounts, "was demonstrably false." He cites a number of purported payments made by him to a Tennessee court, but does not cite

properly before us and will not be considered. See generally *Bienert v. Dickerson*, 276 Ga. App. 621, 622-23(1) (624 SE2d 245) (2005) (declining to rule on issues addressed in a summary judgment ruling because the party failed to appeal from the designated final order within 30 days of its entry).

to the record or otherwise demonstrate that he actually made any payments in Georgia pursuant to the Georgia court order entered on July 9, 2025. Furthermore, he does not argue that any such purported payments equaled the amounts he owed for child support under the Georgia court order, nor does he provide any citations of authority to support his conclusory assertion that his purported payments of $161.60 "was central to the 'willful' determination" finding him in contempt for failing to pay $4,235.34 in child support arrearage.

Martin also argues that the trial court's finding of willfulness in failing to pay "is legally irreconcilable with the court's own finding of [his] indigence." However, the only case citation he provides to support this contention includes an incorrect page number, and a review of the appropriate citation shows that the case does not address indigency or child support. See *Sampson v. Cureton*, 343 Ga. App. 466 (807 SE2d 465) (2017). Furthermore, Griffith points to record evidence demonstrating that the indigency finding was made in a different case that was filed after this court's contempt ruling.

As stated above, "[t]he burden is on the party alleging error to show it affirmatively by the record. ... [I]t is not the function of appellate judges to engage in

the insipid search for support of alleged error without citation to relevant parts of the record." *Walls v. Sumter Regional Hosp.*, 292 Ga. App. 865, 870(3) (666 SE2d 66) (2008) (citations and punctuation omitted). Additionally, this Court has routinely held that a party's argument is abandoned "if it provides general citations to the 'most basic legal authority' without providing any legal authority or argument related to the specific facts of [the] case." *In the Interest of K. R.*, 367 Ga. App. 668, 677(2)(b) (888 SE2d 204) (2023). "[R]hetoric is not a substitute for cogent legal analysis, which is, at a minimum, a discussion of the appropriate law *as applied to the relevant facts*[,]" *Gresham v. Harris*, 349 Ga. App. 134, 138(1) n. 9 (825 SE2d 516) (2019) (citation and punctuation omitted), and "mere conclusory statements are not the type of meaningful argument contemplated by our rules." *PraultShell, Inc. v. River City Bank*, 366 Ga. App. 70, 80(2) (880 SE2d 616) (2022) (citation and punctuation omitted).

Because Martin has failed to meet his burden of demonstrating error by the record before this Court, the trial court's finding that Martin willfully failed to pay his court-ordered child support is affirmed.

3. Martin argues, as he did in his discretionary application, that the trial court abused its discretion in ordering his incarceration because the court failed to find he

had a present ability to pay the purge amount. Once again, because Martin has failed to provide a transcript or authorized substitute of the contempt hearing, during which the trial court heard evidence, we must presume that the evidence supports the trial court's findings. *Gallemore*, 303 Ga. at 210(1); *Jones*, 287 Ga. at 144. Moreover, although Martin claims on appeal that his "confinement rendered compliance impossible[,]" Martin admits, in fact, that he paid one of the $500.00 purge amounts the day after he was incarcerated and his father paid the other $500.00 purge amount within days of his alleged incarceration. This claim fails.

4. Martin asserts on appeal, as raised in his supplemental discretionary application, that the trial court erred as a matter of law by including a self-executing arrest provision in its contempt order.[5] According to Martin, such a provision violates his due process rights by eliminating the right to notice and a hearing before an individual is deprived of liberty.[6] We agree with Martin.

---

[5] Martin also argues on appeal that the self-executing arrest provision was contrary to the best interests of the child because he purportedly was arrested during a custody exchange. This issue was not raised in Martin's discretionary application, so it is not properly before us. *Zekser*, 293 Ga. at 369(2).

[6] In his appellate brief, Martin cites six cases, but he withdrew four of these cases in his reply brief after Griffith pointed out that the cases did not address self-executing arrest provisions, did not contain material quoted by or referenced by

15

"A self-executing order is an order that imposes future sanctions on a party unless he complies with the terms of the order within a certain length of time." *Rocker*, 343 Ga. App. at 505(2) (citation and punctuation omitted). "Georgia law is clear that a trial court abuses its discretion when it enters such an order in the context of a discovery dispute or contempt proceeding." Id. "This rule results from the fact that orders of incarceration based on a finding of contempt are subject to basic due process requirements, including notice and a right to be heard." Id. (citation and punctuation omitted). As this Court previously has concluded: "A hearing on a party's compliance (or noncompliance) with purge conditions is necessary to satisfy due process" because "the essence of contempt is *wilful* disobedience of a prior court order[,]" and, therefore, a trial court "must examine the circumstances of the failure retrospectively, which means affording the party in contempt an opportunity to explain the circumstances of his failure to purge" and determine whether a party's failure to comply with purge conditions was deliberate. Id. at 506(2) (citations and punctuation omitted). Indeed, the final arbiter as to whether compliance has been achieved must be the trial court, rather than the parties themselves. *Harrell v. Federal Nat'l Payables*,

Martin, or did not appear at the citations provided.

16

284 Ga. App. 395, 399(3) (643 SE2d 875) (2007) (finding that trial court could not base an order of incarceration solely on affidavit of party who sought the order and who averred that purge conditions had not been complied with). The main question in reviewing a contempt order to determine whether it contains a self-executing arrest provision is whether the trial court's order "placed the keys to the jail in the opposing party's hand in that there was no mechanism provided whereby an officer of the court would possess objective information as to whether the order at issue had been complied with." *Floyd v. Floyd*, 247 Ga. 551, 553(2) (277 SE2d 658) (1981).

Here, the trial court found Martin in contempt and delineated the manner in which he was to make his payments, including his "current child support amount of $585.00 per month or $134.48 per week." The court then explicitly stated that its order was "self-executing," and that "upon presentation of a certified pay record or other sufficient proof that [Martin] has failed to make any of the required payments pursuant to this [o]rder, an immediate [a]rrest [o]rder will be issued[.]" Under this self-executing arrest provision, Martin would have no opportunity to make a showing that the order was not violated or that any violation was not willful with respect to future child support payments.

17

Griffith relies on *Floyd*, supra, and *Killmaster v. Killmaster*, 208 Ga. App. 449, 450, 452-53(2)(b) (430 SE2d 817) (1993), to support her argument that the self-executing arrest provision in this case is proper. We disagree. In *Floyd*, our Supreme Court held that a trial court did not need to hold an additional hearing before imposing sanctions after it had adjudicated a party in contempt because the past-due child support involved a fixed past-due monetary amount. 247 Ga. at 553(2). In that case, however, the self-executing provision merely addressed incarceration if the father failed to pay the amount of child support that the court found he owed during the contempt hearing. Id. at 551-52. The case did not involve a self-executing provision related to future amounts that the father might not pay. Id. at 553(2). *Killmaster*, likewise, did not involve future amounts not already adjudicated. In *Killmaster*, the trial court found the former husband in contempt for failing to pay his support obligations and, further, found that the former husband could pay current support obligations due within the 60-day period given to purge his contempt. 208 Ga. App. at 449-50, 452-53(2)(b). The self-executing arrest order did not involve amounts that the former husband might not pay beyond the 60-day purge period already adjudicated by the trial court. Id. at 452-53(2)(b).

18

In contrast, both our Supreme Court and this Court have held that "orders providing that if … future support payments become past due then the debtor would be incarcerated without a hearing are not permissible, because in those cases the respondent would have no opportunity to respond." *Harrell*, 284 Ga. App. at 399(3). See *Mitchell v. Koopu*, 242 Ga. 506(1) (249 SE2d 210) (1978) (reversing contempt order providing that upon an affidavit from the former wife that her former husband failed to make required child support payments, he would be incarcerated without a hearing). That is the situation we have in the present case. Accordingly, we must vacate the contempt order and remand for the entry of a new order that remedies the deficiency complained of with the self-executing arrest provision.

5. Finally, Martin contends, as he did in his discretionary application, that the trial court erred in awarding attorney fees to Griffith without considering the financial circumstances of the parties under OCGA § 19-6-2 and making findings of fact regarding the financial circumstances in its order.[7] We agree that the order is deficient with respect to the award of attorney fees.

---

[7] OCGA § 19-6-2(a)(1) provides that an award of attorney fees is within the sound discretion of the trial court, "except that the court shall consider the financial circumstances of both parties as a part of its determination of the amount of attorney[] fees, if any, to be allowed against either party[.]"

According to Griffith, "[b]ecause there is no transcript of the hearing, and because [Martin] did not attempt to create a transcript of the hearing, [Martin] cannot now claim that the court did not consider evidence of the financial circumstances of the parties." It is true that

> [t]here is a presumption, in the absence of a showing to the contrary, that a public official, including a trial judge, performed faithfully and lawfully the duties devolving upon him by law. And, an appeal with enumerations of error dependent upon consideration of evidence heard by the trial court, will — absent a transcript, be affirmed.

*Fine v. Fine*, 281 Ga. 850, 852(2) (642 SE2d 698) (2007) (citation and punctuation omitted). Accord *Brogdon v. Brogdon*, 290 Ga. 618, 627(7) (723 SE2d 421) (2012) (holding that "absent some indication to the contrary, we presume that the court followed the directive of § 19-6-2(a)(1) to consider the financial circumstances of both parties as a part of its determination of the amount of attorney[] fees, if any, to be allowed against either party") (punctuation omitted). That said, the contempt order in this case, on its face, is deficient. Without stating the basis for its award, the trial

court's contempt order determined that Griffith should be paid $1,000 in attorney fees she incurred "in the bringing of this motion." The order later directs Martin to "reimburse [Griffith] for attorney[] fees she incurred in bringing the contempt action[,]" and details where and when Martin must pay the $1,000.00.

"Generally, an award of attorney fees is not available in Georgia unless authorized by statute or contract." *O'Keefe v. O'Keefe*, 285 Ga. 805, 805-06 (684 SE2d 266) (2009) (citation and punctuation omitted).

> OCGA § 19-6-2 authorizes a court, within its discretion, to award attorney fees in a contempt of court action arising out of a divorce case; however, the court is to consider the financial circumstances of both parties in assessing such an award. An award under OCGA § 19-6-2 depends on the financial circumstances of the parties, not their wrongdoing; it is to be made with the purpose of ensuring effective representation of both spouses in an action arising out of a divorce.

*Cason v. Cason*, 281 Ga. 296, 299-300(3) (637 SE2d 716) (2006) (citations and punctuation omitted). In addition,

> OCGA § 9-15-14(b) authorizes an award of reasonable and necessary attorney fees upon a finding that an action or any part thereof lacked substantial justification, was interposed for delay or harassment, or an attorney or party unnecessarily expanded the proceeding by other improper conduct. ... The damages authorized by § 9-15-14 are intended

not merely to punish or deter litigation abuses but also to recompense litigants who are forced to expend their resources in contending with abusive litigation.

*O'Keefe*, 285 Ga. at 806 (citations and punctuation omitted).

Here, as in *O'Keefe*, "the trial court's order fails to state the statutory provision it relies on, and it fails to set forth the required facts to support an imposition of attorney fees under either OCGA § 19-6-2 or OCGA § 9-15-14." 285 Ga. at 806. "If the award of attorney fees to [Griffith] was predicated on OCGA § 9-15-14, it must be vacated because the findings necessary to support such an award were not made." *Moon v. Moon*, 277 Ga. 375, 379(6) (589 SE2d 76) (2003). "If the award was predicated on OCGA § 19-6-2, it must be vacated" because the trial court's order does not include any evidence of the parties' financial circumstances to "support the conclusion that the award of attorney fees was to ensure that the recipient spouse could afford effective representation." Id. (footnote omitted). See also *Amoakuh v. Issaka*, 299 Ga. 132, 134(3) (786 SE2d 678) (2016) (vacating and remanding an attorney fee award made under OCGA § 19-6-2 because the trial court's order did not include "findings of fact regarding the relative financial circumstances of each party, or otherwise cause the record to show that such had been properly considered"). As

a result, the trial court's award of attorney fees in connection with the contempt proceeding must be vacated, and the case must be remanded for the trial court to explain the statutory basis for the award and include any findings necessary to support it. *O'Keefe*, 285 Ga. at 806.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Barnes, P. J., and Markle, J., concur.*