## A01A1236. HARVEY et al. v. LINDSEY.
### (554 SE2d 523)

PHIPPS, Judge.

Larry O. Harvey and Patricia O'Quinn Harvey (collectively Harvey) filed an application for contempt against Jo Edith Lindsey and R. M. Hightower. Harvey alleged that Lindsey and Hightower had wilfully and intentionally violated a court order issued in November 1999 that set forth guidelines for certain easements in which Harvey and Lindsey shared a joint interest. The trial court denied the application, finding Lindsey not in wilful violation of its order but making no finding as to Hightower.

In this appeal, Harvey contends that the trial court erred by modifying rather than clarifying its earlier order, by applying an incorrect standard to find that Lindsey was in nonwilful contempt of the order, and by failing to address the question of Hightower's contempt. Only the last issue has any merit.

Jo Edith Lindsey and Patricia O'Quinn Harvey are sisters. After their father, E. O. Rutland, died in 1986, each inherited various tracts of land from his estate. Lindsey inherited a 129.55-acre farm off Rutland Road in Tift County. Their sister, Frankie Esther Horner, inherited a 100.5-acre farm that adjoins the Lindsey farm on its north side, and Patricia Harvey inherited a 23.5-acre tract that borders the south side of the Lindsey farm. About five years before his death, Rutland had conveyed another tract consisting of fifty acres which borders the west side of the Lindsey farm. Rutland conveyed the 50-acre parcel to Larry O. Harvey, the husband of Patricia O'Quinn Harvey, Bobby Lindsey, the spouse of Jo Edith Lindsey, and also to Wayne Franks, Henry Rutland, and Charles Kent, Jr. Each obtained an undivided one-fifth interest. Both the 50-acre tract and the 23.5-acre tract are landlocked. Under the distribution of assets of

E. O. Rutland's estate, a connection of field and nonfield roads bordering on and meandering over portions of the Horner and Lindsey farms comprise easements for ingress and egress to the 50- and 23.5-acre parcels.

After Lindsey erected two gates and allowed her neighbor, R. M. Hightower, to install a satellite dish within the easement area, Harvey sued for the removal of these obstructions. The trial court entered an order permitting Lindsey to maintain gates inside the easement as long as she provided access keys to Harvey. The court also found that Hightower's satellite dish did not impair the easement. That order was appealed, and we reversed, finding the obstructions constituted unauthorized encumbrances upon the dominant tenement's easement belonging to Harvey.[1]

On remand, the trial court issued an order in November 1999 that provides:

> All easements of record, traditional easements as well as those easements perpetual in nature, shall remain unobstructed with rights of use to those persons to whom an easement has been granted as well as those passing over said properties via said easements with permission of the parties hereto or those persons to whom said easement has been granted.

The order states that

> the general maintenance, upkeep and repair of said easements shall be the joint responsibility of the owner of the fee upon which said easements are located and those with easement rights, and they shall be equally responsible for cost and materials needed to maintain the same in the condition suitable for its intended use as a travel way to and from properties owned by the respective parties.

The order also directs that "[n]o gates or other access control devices shall be erected over any of the said easements," and it required the removal of the satellite dish within 30 days. The order also obligated Lindsey to complete within 60 days any and all repairs to easements made "impassable" by "ditches, drainage ways and erosion caused by the diversion of water or other intentional or negligent destruction of easements. . . ."

---

[1] *Harvey v. Hightower*, 239 Ga. App. 684 (521 SE2d 367) (1999); see *Hill v. Miller*, 144 Ga. 404, 407 (1) (87 SE 385) (1915) (possessor of easement over private way cannot be obstructed from using it by means of gates and fences).

More than 60 days later, dissatisfied with the responses to the order, Harvey sought to have Lindsey and Hightower found in contempt. Before conducting a hearing on the matter, in order to gain familiarity with the location and condition of the easements, the trial judge, accompanied by counsel for the parties, rode in a vehicle over the easements.

At the hearing, Bobby Lindsey, the executor of Rutland's estate, explained that the easements had been drawn to ensure access to the 50-acre tract and the 23.5-acre tract. Thus, when the northern route that included an area prone to flooding became wet, access to the two tracts could still be accomplished via an alternate route. Bobby Lindsey testified that after part of the roadway had been washed out by rain, in part due to farming operations, he made sure that this area known as "the waterway" was reworked. Dirt and hay were used to fill some holes and to smooth out the road, and in his view, these measures seemed to solve the erosion problem. Bobby Lindsey testified that these repairs were performed within 60 days of the court order. He further testified that within 60 days of the order, both gates had been pulled back and chained to make them unusable. This allowed access to the property.

Patricia Harvey testified that she thought that the order meant for Lindsey to remove the gates and also testified that the satellite dish was not removed within 30 days of the order. In her deposition, Jo Edith Lindsey explained that she did not understand that the order required the removal of the gates. She testified that she thought that "shall be erected" meant only that she could not put up any new gates. Lindsey testified that the portion of the easement susceptible to flooding had been grassed over to prevent topsoil erosion. When asked whether the easements had been returned to their original condition, Jo Edith Lindsey responded, "[i]t's my belief that they are in better condition, shape than they've ever been, especially the last six years."

In a detailed, comprehensive, seven-page order, the trial court clarified its earlier order and found that Lindsey was not in wilful violation of that order. Despite determining firsthand that the road was traversable, the court nevertheless ordered Lindsey to remove all posts and boards remaining "from where a gate previously was up." Finding its earlier order lacking in clarity, the trial court observed that the order did not explicitly require removal of the posts, boards, and gates. The court noted, "I am not finding her in contempt for failing to do that. I did not order her to do it. The implication would be to do so. But in order to find somebody in contempt, I must find they willfully disobeyed the Court order. I don't believe that was the case. . . ." Similarly, the trial court ordered Lindsey to remove tree limbs that were encroaching into a section of easement.

But the trial court "decline[d] to find Ms. Lindsey in contempt for failure to cut the limbs because the Court didn't tell her to cut the limbs."

1. Harvey contends that the trial court erred in issuing an order that modified rather than clarified the earlier order. Harvey argues that the November 1999 order directed that all easements be returned to their original condition at the time they were granted; whereas, the November 2000 order found "the present condition" to be sufficient. Harvey argues that no finding was made that "original condition" and "present condition" share the same meaning. Harvey also complains that the earlier order did not concern itself with the property lines but, instead, focused on various impediments to travel caused by Lindsey's farming operations.

In a contempt proceeding, a court may interpret and clarify an existing order but may not modify the terms and obligations already set forth.[2] To determine whether an order has been clarified, as opposed to being modified, the test is whether the new order is a reasonable clarification or so contrary to the apparent intent of the original order as to constitute a modification.[3] The intent is found by looking at the content of the order and the context in which it was created.[4]

The November 1999 order set forth the respective rights and obligations of Harvey, Lindsey, and Hightower relating to the easements for ingress and egress. The November 2000 order methodically evaluated the condition of each of the easements, apparently to determine compliance with the first order. While it is true that the earlier order did not detail the boundaries of the five separate easement areas, it is also true that those boundaries were established by deed or grant and the trial court did not alter them.

Although Harvey claims that the first order required Lindsey to return all easements to their original condition, the order says no such thing.[5] A careful reading of that order shows that Lindsey bore sole responsibility for erosion and problems caused by the diversion of water "or other intentional or negligent destruction of easements which causes any of the same to be impassable," and only in those circumstances did she "bear the cost and expense associated with returning said easements to their original condition."

Harvey mistakenly complains that the second order constituted

---

[2] *Millner v. Millner*, 260 Ga. 495, 497 (2) (397 SE2d 289) (1990); *Gallit v. Buckley*, 240 Ga. 621, 626 (3) (242 SE2d 89) (1978).

[3] See *Ward v. Ward*, 236 Ga. 860, 861-862 (1) (226 SE2d 52) (1976).

[4] See id.

[5] See *Roberts v. Roberts*, 206 Ga. App. 423, 424 (2) (425 SE2d 414) (1992) (easement rights impliedly include authority to do things reasonably necessary for the enjoyment of the rights granted).

a change that would relieve Lindsey of any obligation to repair any impediments to travel, including future ones caused by farming operations. On the contrary, the first order expressly directs that the easements remain free of obstructions to ensure "free and unobstructed ingress and egress," and makes plain that Lindsey would be responsible for damage caused by farming activities. The second order could not and did not change these obligations.

As a matter of law, neither a dominant tenement nor a servient tenement can interfere with each other's rights to use a nonexclusive easement for ingress and egress.[6] A nonexclusive easement for ingress and egress necessarily means that trees or bushes, regardless of their age, cannot obstruct or impair travel.[7] And, because a servient owner, like Lindsey, is not under a legal obligation to keep a private way in repair for the benefit of the dominant owner, the November 2000 order clarifies that the responsibility for maintenance and repair is contingent upon the ownership and use of the various sections that collectively comprise these easements.[8] Having reviewed the second order, we find that it clarified the earlier order and did not alter existing rights or obligations.

2. Harvey contends that the trial court erred in finding Lindsey in "non-willful" contempt. Harvey claims that the first order required Lindsey to trim the limbs from all trees, regardless of age, to the extent that the same would, if not removed, scratch or otherwise interfere with the ingress and egress of a vehicle. Harvey contends that the trial court's finding that limbs and trees needed cutting clearly shows that Lindsey was in wilful violation of the earlier order. We do not agree.

Under OCGA § 15-1-3 (3), "[e]very court has power [t]o compel obedience to its judgments, orders, and process. . . ." As such, trial courts possess inherent power to punish for contempt.[9] The question of whether contempt has occurred is for the trial court.[10] When the record contains any evidence to support a trial judge's determination that a party either has or has not wilfully disobeyed the trial court's order, we will affirm.[11]

Here, during the hearing, the trial court specifically observed that all of the easement areas were traversable by vehicle and in some parts, "much smoother than my driveway," and in other parts,

---

[6] *Upson v. Stafford*, 205 Ga. App. 615, 616-617 (422 SE2d 882) (1992).

[7] See *Harvey*, supra, 239 Ga. App. at 684.

[8] See *Puryear v. Clements*, 53 Ga. 232, 235 (2) (1874); see Pindar, Ga. Real Estate Law & Procedure, § 8-25.

[9] *Griggers v. Bryant*, 239 Ga. 244, 246 (1) (236 SE2d 599) (1977).

[10] *Warehouse Carpet Sales &c. v. S.C.J. Assoc.*, 170 Ga. App. 352, 353 (2) (317 SE2d 328) (1984).

[11] *G.I.R. Systems v. Lance*, 228 Ga. App. 329, 331 (4) (491 SE2d 530) (1997).

probably comparable to most field roads in the locality. Even assuming that some tree limbs did need trimming, that fact alone would not establish that Lindsey knowingly and wilfully disobeyed a command of the court.[12] The trial court did not abuse its discretion in finding that she did not do so.[13]

3. Harvey contends that the trial court erred by issuing an order that failed to address the question of Hightower's contempt. Harvey points out that by failing to respond to the complaint, Hightower effectively admitted that he did not comply with the court's order directing that he remove the satellite dish within 30 days.

The burden of establishing the fact of contempt is on the party asserting it.[14] Harvey offered uncontroverted evidence that the satellite dish was not removed within the required 30 days. An entry of service form confirms that Hightower was served with the complaint and a rule nisi order directing that he appear in court on March 17 at 9:00 a.m. Hightower did not file an answer or appear at the hearing. By ignoring the complaint, Hightower did so at his own peril.[15] By failing to respond to allegations that he "willfully and intentionally violated this Court's Order by failing and refusing to remove said satellite dish as ordered," Hightower admitted those allegations and waived his defenses.[16] On remand, we direct the trial court to address the issue of Hightower's contempt. Although Harvey seeks costs and attorney fees, these are not obtainable in these circumstances,[17] and OCGA § 15-6-8 (5) does not permit the fine to exceed $500.

*Judgment affirmed and case remanded with direction. Smith, P. J., and Barnes, J., concur.*

DECIDED AUGUST 27, 2001.

*Joseph I. Carter*, for appellants.
*Gray & Heard, Joseph B. Gray, Jr.*, for appellee.

---

[12] See *Roberts*, supra, 206 Ga. App. at 425 (2).
[13] See *Torres v. Putnam County*, 246 Ga. App. 544, 547 (541 SE2d 133) (2000).
[14] *Martin v. Waters*, 151 Ga. App. 149, 150 (2) (259 SE2d 153) (1979).
[15] See OCGA § 9-11-55 (a).
[16] See *Owens v. State of Ga.*, 241 Ga. App. 140 (4) (525 SE2d 150) (1999); *McCombs v. Southern Regional Med. Center*, 233 Ga. App. 676, 681 (2) (504 SE2d 747) (1998) (all named defendants must answer complaint).
[17] See *Johnson v. Kaplan*, 225 Ga. App. 53, 56 (3) (483 SE2d 292) (1997).