**FIFTH DIVISION
MCFADDEN, P. J.,
BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 27, 2017**

# In the Court of Appeals of Georgia

A17A1177. ROCKER v. FIRST BANK OF DALTON.

BRANCH, Judge.

John Rocker appeals from an order of the Whitfield County Superior Court which found Rocker in contempt of court based on his failure to comply with a subpoena for the production of documents served on him by First Bank of Dalton during post-judgment discovery. Although Rocker does not challenge the trial court's finding of contempt, he claims that the contempt order fails to comply with Georgia law in two respects. First, Rocker contends that the purge conditions in the contempt order are too indefinite to allow him to determine what documents he must produce to purge himself of contempt. Rocker further asserts that the order is self-executing, in that it required Rocker to report to jail without affording him a hearing to determine whether he had met the purge conditions. We agree with Rocker and we

therefore vacate the contempt order and remand for the entry of a new order that remedies the deficiencies complained of.

As a general rule, where an order of civil contempt is supported by at least some evidence, we will not disturb that order absent an abuse of discretion by the trial court. *Thompson v. State*, 294 Ga. App. 363 (670 SE2d 152) (2008). Such an abuse of discretion occurs where the trial court either fails to apply or misapplies the relevant law. See *North Druid Dev. v. Post, Buckley, Schuh & Jernigan*, 330 Ga. App. 432, 441 (767 SE2d 29) (2014) (on motion for reconsideration); *Mathis v. BellSouth Telecommunications*, 301 Ga. App. 881 (690 SE2d 210) (2010). Additionally, to the extent that the question of the validity of a contempt order involves a question of law, we review that question de novo. See *Callaway Blue Springs v. West Basin Capital*, 341 Ga. App. 535, 537 (1) (801 SE2d 325) (2017).

The relevant facts are undisputed[1] and show that Rocker is a principal in Karock, LLC. In 2005, Karock obtained a loan in the amount of $1,343,022.70 from First Bank of Dalton ("the Bank") that was secured by both certain real property located in Whitfield County and Rocker's personal guaranty. After Karock defaulted

---

[1] Rocker has not appealed the trial court's finding of contempt and therefore concedes that the evidence supports that finding.

on the loan, the Bank foreclosed on the property and sold it at auction for $841,000, leaving a deficiency of $539,382.04. The Bank then obtained a judicial confirmation of the sale,[2] and in December 2011, it filed the current action against Karock and Rocker seeking to recover the amount due under the note. Rocker and Karock consented to the entry of judgment against them, and in October 2012, the trial court entered an order of judgment against Karock and Rocker jointly and severally in the amount of $685,744.00.[3]

In December 2012, the Bank served its first post-judgment discovery requests on Rocker in an effort to collect on its judgment. As detailed in the trial court's order, Rocker was not cooperative with the discovery process and was especially uncooperative with respect to the scheduling and taking of his deposition. Rocker's noncompliance with discovery led the Bank to obtain a subpoena requiring Rocker to appear for his deposition on July 24, 2015 and to produce certain documents at that time. Rocker did not appear for the deposition noticed in the subpoena, but he

---

[2] The trial court confirmed the foreclosure sale in an order entered April 12, 2010, and this court subsequently affirmed that order pursuant to Court of Appeals Rule 36 in an unpublished opinion. See *Karock, LLC v. First Bank of Dalton* (Case No. A11A0956, decided November 4, 2011.)

[3] This amount represented $539,382.04 in principal, $56,650.14 in interest, $89,404.82 in attorney fees, and $307 in costs.

eventually agreed to sit for a deposition on September 17, 2015. Rocker, however, abruptly terminated the September deposition before the Bank's attorney was through questioning him and over the objection of the Bank. The Bank then negotiated with Rocker's attorneys for several months in an effort to schedule a continuation of Rocker's deposition. When these efforts failed and Rocker continued in his refusal to cooperate, the Bank filed a motion for contempt on April 21, 2016.

After holding a hearing on the contempt motion, the trial court issued an order on June 20, 2016 (the "Production Order"), requiring Rocker to produce, no later than June 30, 2016, all documents not previously produced that were responsive to the July 2015 subpoena and to appear for his continued deposition on August 19, 2016. Additionally, the Production Order continued the hearing on the contempt motion until August 26, 2016.

Following entry of the Production Order, Rocker produced additional documents and appeared for the August 19 deposition. During that deposition, however, Rocker admitted that he had access to or possession of certain documents that were responsive to the Bank's subpoena, but that he had not yet produced those documents.

At the August 26 contempt hearing, the trial court reviewed Rocker's compliance with the Production Order and heard arguments from the parties as to whether Rocker had produced all subpoenaed documents. The court thereafter entered an order (the "Contempt Order") finding Rocker in contempt for failing to comply fully with the Production Order. The Contempt Order required Rocker to be confined to the Whitfield County jail "for a maximum of 20 days commencing at 8:00 p.m. on" November 11, 2016, but further provided that Rocker could purge himself of contempt if, before 8:00 p.m. on November 11, he paid a $300 fine and "produce[d] any documents that have been requested . . . and that have not been produced, including, but not limited to," 10 specific categories of documents described in the Contempt Order.

On the day he was due to report to the Whitfield County jail, Rocker filed a "notice of compliance" with the trial court stating that he had produced responsive documents for each of the 10 categories specified in the Contempt Order. That same day, Rocker also filed a notice of appeal from the Contempt Order.

1. A party may not be punished for failure to comply with the purge conditions of a contempt order unless those conditions are set forth "in definite terms" that are

express rather than implied.[4] *Hall v. Nelson*, 282 Ga. 441, 444 (3) (651 SE2d 72) (2007) (citation and punctuation omitted). See also *Cabiness v. Lambros*, 303 Ga. App. 253, 255 (1) (692 SE2d 817) (2010). Thus, if the order is "not sufficiently definite and certain," that fact may constitute a defense to an assertion of noncompliance. See *Schiselman v. Trust Co. Bank*, 246 Ga. 274, 277 (2) (271 SE2d 183) (1980); *In re Butterfield*, 265 Ga. App. 745, 749 (2) (595 SE2d 588) (2004). Here, Rocker contends that the contempt order is not sufficiently definite and certain, because it requires him to "produce *any documents that have been requested . . .* and that have not been produced, *including, but not limited to*," the 10 specific categories

---

[4] In light of the requirement that purge conditions must be express, rather than implied, we find no merit in the Bank's argument that any uncertainty as to what documents Rocker was required to produce could be resolved by reference to the August 2016 hearing transcript. "[T]he very nature of the proceeding in either civil or criminal contempt for an alleged disobedience of a court order requires that the language in the commands [of the order] be clear and certain." *Hall v. Nelson*, 282 Ga. 441, 444 (3) (651 SE2d 72) (2007) (citation and punctuation omitted).

of documents described in the order.[5] (Emphasis supplied.) As explained more fully below, we find that under the circumstances of this case, the foregoing language is susceptible of more than one reasonable interpretation. Accordingly, we agree with Rocker that the Contempt Order must be vacated.

The motion that resulted in the Contempt Order was brought pursuant to OCGA § 24-13-26 (a), which provides that "*[s]ubpoenas may be enforced* by attachment for contempt and by a fine of not more than $300.00 or not more than 20 days' imprisonment, or both." (Emphasis supplied.) Additionally, that motion sought only Rocker's compliance *with the July 15, 2015 subpoena*; it did not seek to compel the production of any additional documents that had been requested during the post-judgment discovery period. And in the Production Order, the trial court ordered

---

[5] In its brief, the Bank contends that Rocker's first enumeration of error is not "ripe for review" because the trial court has not yet ruled on whether Rocker successfully purged his contempt. The Bank further argues that Rocker has waived this enumeration of error because he failed to challenge in the trial court any alleged lack of specificity in the contempt order and he also filed a notice of compliance stating that he had produced all of the documents specified in the contempt order. These arguments ignore the fact that an order of contempt is directly appealable. See *American Med. Security Group v. Parker*, 284 Ga. 102, 104 (4) (663 SE2d 697) (2008). And there is no requirement that following entry of a contempt order the party against whom the order is directed seek further guidance from the court on any purge conditions contained therein before challenging the order on appeal. Moreover, the mere fact that Rocker filed a notice of compliance did not mean that the trial court would find that he had successfully met the purge conditions.

7

Rocker to produce all documents *responsive to the July 2015 subpoena* — it did not order him to produce any additional documents. Thus, given the basis for the Bank's contempt motion, the specific relief sought in that motion, and the contents of the Production Order, Rocker is correct that one could logically construe the phrase "any documents that have been requested" to refer only to those documents responsive to the subpoena. Put another way, one could read the Contempt Order as requiring Rocker to produce the 10 specified categories of documents and any additional documents requested under the July 2015 subpoena that did not otherwise fall into one of those 10 categories.

Although one could reasonably interpret "any documents that have been requested" as referring only to those documents requested in the July 2015 subpoena, the record shows that a number of other requests to produce were made over the course of the post-judgment discovery period. Some of these requests were formal, made through either a written request to produce under OCGA § 9-11-34 or through additional subpoenas. Other requests were more informal and were made by the Bank's attorney at Rocker's deposition and/or via an email exchange between counsel for the parties. And the Contempt Order references some (but not all) of these additional requests to produce. Thus, the Contempt Order could also be read as

8

requiring Rocker to comply with every request to produce made during the course of post-judgment discovery and further requiring him to produce the 10 specified categories of documents listed in the Contempt Order. Notably, the Bank reads the Contempt Order in this way; its brief makes clear that the Bank reads the purge conditions as requiring Rocker to produce all documents requested at any time during post-judgment discovery.

Given that the purge condition in the Contempt Order requiring Rocker to "produce any documents that have been requested . . . and that have not been produced" is susceptible of more than one reasonable interpretation, we find that the order was not sufficiently definite and specific enough to allow Rocker to determine what documents he needed to produce to purge himself of contempt.

2. Rocker argues that the trial court abused its discretion by ordering him to report to jail if the purge conditions were not met. Specifically, Rocker contends that the self-executing nature of the contempt order violated his due process rights in that it ordered Rocker's incarceration without providing him a hearing to determine whether he complied with the purge conditions and, if not, whether any noncompliance was willful. We agree.

A self-executing order is "[a]n order that imposes future sanctions on a party unless he complies with the terms of the order within a certain length of time." *Harrell v. Fed. Nat. Payables*, 284 Ga. App. 395, 397 (2) (643 SE2d 875) (2007). See also *Tenet Healthcare Corp. v. Louisiana Forum Corp.*, 273 Ga. 206, 212 (3) (538 SE2d 441) (2000). And Georgia law is clear that a trial court abuses its discretion when it enters such an order in the context of a discovery dispute or contempt proceeding. *Tenet Healthcare*, 273 Ga. at 212 (3). See also *Steele v. Colbert*, 182 Ga. App. 680 (356 SE2d 736) (1987); *Maxey v. Covington*, 126 Ga. App. 197, 199 (190 SE2d 448) (1972). This rule results from the fact that orders of incarceration based on a finding of contempt are subject to basic due process requirements, "including notice and a right to be heard." *Harrell*, 284 Ga. App. at 398 (3), citing *Maples v. Seeliger*, 165 Ga. App. 201, 202 (1) (299 SE2d 906) (1983). See also *Roehl v. O'Keefe*, 243 Ga. 696, 697 (256 SE2d 375) (1979); *Mitchell v. Koopu*, 242 Ga. 506, 506 (1) (249 SE2d 210) (1978).

A hearing on a party's compliance (or noncompliance) with purge conditions is necessary to satisfy due process for several reasons. First, as this case demonstrates, parties can disagree as to what constitutes full compliance with purge conditions,

especially in the context of discovery disputes that involve numerous documents.[6] As we have previously explained,

> Whether a respondent who tendered [numerous] pages made 'full and complete' discovery responses is not a yes-or-no question . . . . Finding that no response was made after a response was ordered is straightforward and may not require a hearing; finding that insufficient responses were made despite voluminous document production is not straightforward, and notice and a hearing is required before the court may order the parties incarcerated.

*Harrell*, 284 Ga. App. at 399 (3). And the final arbiter as to whether compliance has been achieved must be the trial court, rather than the parties themselves. Id. (trial court could not base order of incarceration solely on affidavit of party who sought the order and who averred that purge conditions had not been complied with); *Roehl*, 243 Ga. at 697 (3) (same); *Mitchell*, 242 Ga. at 506 (1) (same).

Furthermore, "[t]he essence of . . . contempt is *willful* disobedience of a prior court order." *Greene v. Greene*, 306 Ga. App. 296, 300 (3) (701 SE2d 911) (2010)

---

[6] As noted previously, Rocker filed a notice of compliance with the trial court stating that he had produced responsive documents that fell into each of the 10 categories specifically described in the contempt order. In its brief, however, the Bank disputes the notice of compliance and asserts that Rocker failed to produce any responsive documents for at least three of the 10 categories.

(emphasis supplied). Thus, a defense to both civil and criminal contempt is that the violation of the order at issue "was not willful (e.g., [the] inability to pay or comply)." *Schiselman*, 246 Ga. at 277 (1) (citation omitted). Before incarcerating a litigant for failure to comply with purge conditions, therefore, a trial court must determine that this failure was deliberate. *Harrell*, 284 Ga. App. at 399 (3). Put another way, given the requirements of due process, a trial "court cannot assume that [any] failure" to comply with purge conditions "will be unjustifiable." *Steele*, 182 Ga. App. at 680. Instead, the court "must examine the circumstances [of the failure] retrospectively [, which] means affording [the party in contempt] an opportunity to explain the circumstances" of his failure to purge. Id. See also *Tenet Healthcare*, 273 Ga. at 211.

As the foregoing demonstrates, where a court finds a party to be in contempt but also provides that the contempt may be purged by meeting certain conditions, the court must afford the party in question a hearing to determine whether the purge conditions have been met before it can order the party's incarceration.[7] Because the order in this case failed to satisfy these requirements, we must vacate that order. See *Harrell*, 284 Ga. App. at 399 (3) (reversing order of incarceration where trial court

---

[7] We note that if, at the close of such a hearing, the trial court finds that the purge conditions have not been met, it may order the immediate incarceration of the party in question.

12

failed to provide litigants with a hearing on whether they had failed to comply with the purge conditions contained in the court's prior order of contempt). Cf. *Blake v. Spears*, 254 Ga. App. 21, 24 (3) (561 SE2d 173) (2002) (affirming order of incarceration where trial court gave litigant opportunity to purge himself of contempt and subsequently held a hearing as to whether the party had met the purge requirements and whether any failure to do so was willful); *Cook v. Rowland*, 221 Ga. App. 835, 836 (472 SE2d 444) (1996) (affirming a finding of contempt and order of incarceration; order was entered following a hearing, at which the trial court found that the party had willfully refused to comply with the previously entered court order requiring that he respond to post-judgment discovery requests).

For the reasons explained above, we vacate the Contempt Order and remand the case for the entry of a new order. Because Rocker has not challenged the finding of contempt, no hearing is necessary before entry of the new order. That order, however, must identify with reasonable specificity the documents (or categories of

13

documents) which Rocker is required to produce to purge himself of contempt,[8] give

Rocker some amount of time to comply with the purge conditions,[9] and provide for

a hearing to determine whether Rocker has complied with those conditions in a timely

fashion and, if not, whether his failure to do so was willful. Should the trial court then

find that Rocker has willfully failed to comply fully with any purge conditions, it may

---

[8] We note that given the breadth of some of the Bank's discovery requests, merely incorporating by reference the requests to produce to which the order is referring (e.g., all documents requested in the subpoena of July 24, 2015) may not provide the requisite specificity. For example, one of the categories of documents requested in the July 2015 subpoena is "[a]ny and all documents, contracts, or proposed contracts *relating to the sale or purchase of any goods or services* by [Rocker] for the period January 1, 2010 to the present." (Emphasis supplied.) Taken to its logical extreme, this request could be interpreted as asking Rocker to produce documentation for every purchase he has made from the grocery store, drugstore, or gas station since January 1, 2010.

[9] In deciding what amount of time is reasonable under the circumstances, the trial court may take into consideration the amount of time already afforded Rocker to produce any requested documents.

exercise its contempt powers under OCGA § 15-6-8 (5)[10] and it may also enter an award of attorney fees to the extent such fees are allowed under relevant law.[11]

*Judgment vacated and case remanded. McFadden, P. J., and Bethel, J., concur.*

---

[10] We note that because Rocker has not appealed the finding of contempt, the trial court could rely on that finding to order Rocker's immediate incarceration, with his release conditioned upon satisfaction of the purge conditions. See *Gay v. Gay*, 268 Ga. 106, 107 (2) (485 SE2d 187) (1997); *Ensley v. Ensley*, 239 Ga. 860, 861-862 (238 SE2d 920) (1977); OCGA § 15-6-8 (5). Should the new order provide for Rocker's immediate incarceration, however, then the purge conditions would have to be based solely on the Production Order and could not encompass any additional discovery requests served on Rocker by the Bank. This limitation results from the fact that the unchallenged contempt finding is based on Rocker's failure to comply with the Production Order and not on Rocker's alleged failure to comply with any other discovery requests.

[11] The vacated order included an award of attorney fees under OCGA § 9-15-14 (b). In a recent decision, however, this Court found that OCGA § 9-15-14 did not apply in the context of a post-judgment discovery dispute. See *RL BB ACQ I-GA CVL, LLC v. Workman*, 341 Ga. App. 127, 135 (798 SE2d 677) (2017). The Supreme Court of Georgia has now granted certiorari on this question. See *Workman v. RL BB ACQ I-GA CVL, LLC*, Case No. S17C1485 (Aug. 28, 2017).

15