**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 31, 2018**

# In the Court of Appeals of Georgia

A18A0833. VALLEY v. SOUTH ATLANTIC CONFERENCE OF SEVENTH-DAY ADVENTIST.

BARNES, Presiding Judge.

In 2011, the trial court entered default judgment in favor of Plaintiff Clinton Valley in his declaratory judgment action against Defendant South Atlantic Conference of Seventh-day Adventist (the "South Atlantic Conference"), ruling that the South Atlantic Conference owed certain obligations to Valley under its retirement benefits plan based on verbal and written assurances that it had made to him. In 2016, Valley filed a motion for contempt sanctions against the South Atlantic Conference, arguing that it had failed to fulfill those obligations. The trial court denied Valley's motion, resulting in this appeal. For the reasons discuss below, we reverse the trial

court's ruling on Valley's motion for contempt and remand for action consistent with this opinion.

The record reflects that the global ministry of the Seventh-day Adventist Church is coordinated and governed by its General Conference and is further organized into several regional divisions and conferences. The South Atlantic Conference is a member of the North American Division of the General Conference (the "North American Division").

Before January 1, 2000, the North American Division had a defined benefit retirement plan that was the primary source of retirement benefits for the employees of its regional conferences, including the South Atlantic Conference (the "NAD Retirement Plan"). After that date, the North Atlantic Division adopted a new defined contribution retirement plan, leading the South Atlantic Conference and several other regional conferences to establish their own defined benefit retirement plan for their employees, the Regional Conference Retirement Plan (the "Regional Retirement Plan"). An employee could vest in the Regional Retirement Plan by, among other things, completing five years of qualifying service.

Valley served as a pastor in the South Atlantic Conference for approximately four years, from June 1999 through July 2003. Before his service in that conference,

Valley served in the Seventh-day Adventist Church outside of the United States for over 24 years.

Following Valley's service as a pastor in the South Atlantic Conference, a dispute arose between the parties as to whether Valley's prior years of service in the Seventh-day Adventist Church outside of the United States would be credited toward the Regional Retirement Plan when he sought to collect retirement benefits. As a result of the dispute, in March 2011, Valley brought a declaratory judgment action against the South Atlantic Conference in the State Court of Fulton County. Valley sought a declaration that the South Atlantic Conference was obligated to credit his prior years of service toward its Regional Retirement Program and had a duty to provide him retirement benefits.

Valley's complaint alleged that based on his prior years of service in the Seventh-day Adventist Church outside of the United States, he qualified for retirement benefits under the NAD Retirement Plan when he transferred to the South Atlantic Conference. According to the complaint, however, Valley was advised by the South Atlantic Conference to waive his rights to receive any benefits in the NAD Retirement Plan so that he could participate in the South Atlantic Conference's newly established Regional Retirement Plan. In this regard, the complaint alleged that

3

Valley received assurances from the South Atlantic Conference that his "prior years of service to the church would be honored in the . . . Regional Retirement . . . Plan," and that in reliance on those assurances, he signed a written waiver relinquishing his rights to receive any benefits in the NAD Retirement Plan and joined the Regional Retirement Plan. The complaint alleged that Valley thus "relied on [the South Atlantic Conference's] assurances and covenant to credit his prior service years towards the Regional Retirement Program to his detriment." Valley's written waiver of benefits in the NAD Retirement Plan was attached as an exhibit to the complaint. Also attached as an exhibit was a letter written by the Executive Secretary of the South Atlantic Conference memorializing the verbal assurances made to Valley and confirming that the Executive Committee of the South Atlantic Conference had voted to credit his prior years of service outside the United States toward the Regional Retirement Plan, such that Valley had 24 years and 11 months of credited service.

The complaint further alleged that despite Valley's reliance on those assurances, the Executive Secretary of the South Atlantic Conference later sent a letter to Valley in March 2005 stating that the Regional Retirement Plan would "only cover [his] actual time spent at our conference" and would not credit his prior years of service in the Seventh-day Adventist Church outside of the United States. A copy

4

of the letter was attached to the complaint. According to the complaint, all subsequent efforts by Valley to have the South Atlantic Conference "honor its agreement were rebuffed," such that an actual and justiciable controversy existed between the parties as to whether the South Atlantic Conference would be obligated to credit Valley's prior service years toward the Regional Retirement Plan when he applied for retirement benefits. Consequently, the complaint sought a declaration from the trial court that the South Atlantic Conference was obligated, based on its verbal and written assurances, to credit Valley's prior years of service towards its Regional Retirement Program and to provide him with retirement benefits based on the parties' understanding and the assurances that had been given.[1]

---

[1] See OCGA § 13-3-44 (a) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."); *Thompson v. Floyd*, 310 Ga. App. 674, 682-683 (3) (713 SE2d 883) (2011) (promissory estoppel claim supported by evidence that defendant's promise induced plaintiff, among other things, to relinquish right to future stock options from former employer); *Kamat v. Allatoona Fed. Sav. Bank*, 231 Ga. App. 259, 263 (3) (498 SE2d 152) (1998) ("To prevail on a promissory estoppel claim, plaintiffs must show that (1) defendant made certain promises, (2) defendant should have expected that plaintiffs would rely on such promises, (3) the plaintiffs did in fact rely on such promises to his detriment, and (4) injustice can be avoided only by enforcement of the promise.").

In March 2011, the South Atlantic Conference was served with the summons and complaint seeking declaratory relief. Because the South Atlantic Conference did not timely file an answer to the complaint,[2] the declaratory judgment action went into automatic default under OCGA § 9-11-55 (a).[3] The South Atlantic Conference did not

---

[2] OCGA § 9-11-12 (a) provides in part: "A defendant shall serve his answer within 30 days after the service of the summons and complaint upon him, unless otherwise provided by statute. . . ."

[3] OCGA § 9-11-55 (a) provides:
If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended as provided by law. The default may be opened as a matter of right by the filing of such defenses within 15 days of the day of default, upon the payment of costs. If the case is still in default after the expiration of the period of 15 days, the plaintiff at any time thereafter shall be entitled to verdict and judgment by default, in open court or in chambers, as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury, unless the action is one ex delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of such damages; provided, however, in the event a defendant, though in default, has placed damages in issue by filing a pleading raising such issue, either party shall be entitled, upon demand, to a jury trial of the issue as to damages. An action based upon open account shall not be considered one for unliquidated damages within the meaning of this Code section.
See *BellSouth Telecommunications v. Future Communications*, 293 Ga. App. 247, 248 (666 SE2d 699) (2008) (case automatically in default, where no answer filed

6

move to open the default as a matter of right within 15 days of the automatic default. See id. Subsequently, in May 2011, Valley filed a motion for entry of default judgment against the South Atlantic Conference pursuant to OCGA § 9-11-55 (a). That same month, after the South Atlantic Conference did not respond to Valley's motion, the trial court entered default judgment in favor of Valley and against the South Atlantic Conference. The trial court stated in the default judgment order that each and every item and paragraph of Valley's complaint was supported by proper evidence, and the trial court declared that the South Atlantic Conference was "obligated, based on its verbal and written assurances, to credit . . . Valley's prior service years towards the Regional Retirement Program" and "ha[d] a duty to provide [Valley] with retirement benefits based on the parties' understanding and [the South Atlantic Conference's] assurances." Nothing in the record shows that the South Atlantic Conference ever filed a motion to set aside the default judgment under OCGA § 9-11-60 (d), and the South Atlantic Conference does not contend otherwise on appeal.[4]

---

within statutory period and time for responding was not extended by trial court).

[4] OCGA § 9-11-60 provides in relevant part:
(d) *Motion to set aside.* A motion to set aside may be brought to set aside a judgment based upon:

In 2013, Valley contacted the South Atlantic Conference and sought to commence the payment of his retirement pension benefits. The South Atlantic Conference responded by seeking information and data from Valley that it contended was necessary to properly determine and calculate the amount of his retirement benefits, but ultimately, in June 2016, the South Atlantic Conference denied benefits to Valley on the ground that he did not meet the eligibility requirements of the Regional Retirement Plan. Specifically, the South Atlantic Conference contended that because Valley had only served for 43 months with the South Atlantic Conference, he fell short of the five years of qualifying service necessary to vest in the Regional Retirement Plan.

---

> (1) Lack of jurisdiction over the person or the subject matter;
> (2) Fraud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant; or
> (3) A nonamendable defect which appears upon the face of the record or pleadings. Under this paragraph, it is not sufficient that the complaint or other pleading fails to state a claim upon which relief can be granted, but the pleadings must affirmatively show no claim in fact existed. . . .
>
> (f) *Procedure; time of relief.* . . . A judgment void because of lack of jurisdiction of the person or subject matter may be attacked at any time. Motions for new trial must be brought within the time prescribed by law. In all other instances, all motions to set aside judgments shall be brought within three years from entry of the judgment complained of.

In July 2016, Valley filed a motion for contempt against the South Atlantic Conference in the State Court of Fulton County, asserting that the South Atlantic Conference had refused to fulfill its obligations under the default judgment to credit his prior years of service with the Seventh-day Adventist Church outside of the United States toward the Regional Retirement Plan. Valley contended that the South Atlantic Conference had willfully failed to pay him any retirement benefits, despite the directives contained in the default judgment order, and even though he had provided the South Atlantic Conference with all of the documents it had requested to calculate his benefits. Valley requested that the trial court hold the South Atlantic Conference in willful contempt of the default judgment and sought sanctions and attorney fees.

The South Atlantic Conference opposed the motion for contempt, contending that Valley was not entitled to retirement benefits because he did not have five years of qualifying service to vest in the Regional Retirement Plan. In July 2017, after conducting a hearing where the Executive Director of the Regional Retirement Plan and the former Executive Secretary of the South Atlantic Conference testified, the trial court denied Valley's motion for contempt. The trial court ruled that vesting in the Regional Retirement Plan could occur upon the completion of five years of

9

qualifying service with a participating employer, but that Valley had only 4.2 years of service with the South Atlantic Conference, and the Regional Retirement Plan "does not give service credit for years worked outside the United States." Consequently, the trial court ruled that Valley had never vested in the Regional Retirement Plan and was not entitled to receive any retirement benefits from the South Atlantic Conference. On that basis, the trial court denied Valley's motion for contempt. The trial court made no reference to the default judgment it had previously entered.

Valley now directly appeals from the trial court's order denying his motion for contempt.

1. As an initial matter, the South Atlantic Conference has moved to dismiss Valley's direct appeal, contending that an appeal from an order denying a motion for contempt cannot be directly appealed as a "contempt case" under OCGA § 5-6-34 (a) (2)[5] and instead must be taken by application for interlocutory appeal under OCGA

---

[5] OCGA § 5-6-34 (a) (2) authorizes direct appeals from "[a]ll judgments involving applications for discharge in bail trover and contempt cases." See *Ramsey v. Ramsey*, 231 Ga. 334, 337 (1) (201 SE2d 429) (1973) (construing the aforementioned statutory language to "authorize the appeal of a trial court judgment adjudicating contempt without first making an application for discharge").

10

§ 5-6-34 (b).[6] South Atlantic Conference relies on authority dismissing direct appeals from orders denying motions for contempt on the ground that the orders did not constitute final judgments and should have been appealed through this Court's interlocutory appeal procedure. See, e.g., *Klein v. Standard Fire Ins. Co.*, 191 Ga. App. 417, 418 (382 SE2d 158) (1989); *Commercial Bank v. Simmons*, 157 Ga. App. 391, 391 (278 SE2d 53) (1981). Compare *Hamilton Capital Group v. Equifax Credit Information Svcs.*, 266 Ga. App. 1, 2-3 (1) (596 SE2d 656) (2004) (OCGA § 5-6-34 (a) (2) permits a direct appeal from an interlocutory order holding a party in contempt).

But, whether a trial court's order denying a motion for contempt is considered final or interlocutory turns on the particular facts and circumstances of the case. See *Roberts v. Roberts*, 206 Ga. App. 423, 423 (1) (425 SE2d 414) (1992) (appellant properly filed direct appeal from trial court's postjudgment order denying motion for

---

[6]OCGA § 5-6-34 (b) provides in part:
Where the trial judge in rendering an order, decision, or judgment, not otherwise subject to direct appeal . . . certifies within ten days of entry thereof that the order, decision, or judgment is of such importance to the case that immediate review should be had, the Supreme Court or the Court of Appeals may thereupon, in their respective discretions, permit an appeal to be taken from the order, decision, or judgment if application is made thereto within ten days after such certificate is granted. . . .

11

contempt, where "nothing in the trial court's order reflects it is other than a final judgment"). And, we conclude that under the circumstances of this case, the trial court's order denying Valley's motion for contempt constituted a final judgment that was directly appealable under OCGA § 5-6-34 (a) (1).

OCGA § 5-6-34 (a) (1) authorizes a direct appeal from "[a]ll final judgments, that is to say, where the case is no longer pending in the court below, except as provided in Code Section 5-6-35."

> Even if an order does not specify that it is a grant of final judgment, it nevertheless constitutes a final judgment within the meaning of OCGA § 5-6-34 (a) (1) where it leaves no issues remaining to be resolved, constitutes the court's final ruling on the merits of the action, and leaves the parties with no further recourse in the trial court.

(Citation and punctuation omitted.) *Tyrones v. Tyrones*, 300 Ga. 367, 369, n. 2 (792 SE2d 398) (2016). See, e.g., *R. J. Reynolds Tobacco Co. v. Fischer*, 207 Ga. App. 292, 293 (1) (427 SE2d 810) (1993) (grant of protective order constituted final judgment subject to direct appeal under OCGA § 5-6-34 (a) (1)).

In the present case, the only pending issue to be resolved by the trial court was whether the South Atlantic Conference should be held in contempt for failing to comply with the directives of the default judgment. Once the trial court denied

12

Valley's motion for contempt, there were no further issues to resolve in the case, and Valley had no further recourse in the court below. Under these circumstances, the trial court's order was final and subject to direct appeal under OCGA § 5-6-34 (a) (1), irrespective of whether it could be directly appealed under OCGA § 5-6-34 (a) (2). See *Roberts*, 206 Ga. App. at 423 (1) (postjudgment order denying motion for contempt constituted final judgment). Accord *Eden v. Eden*, 344 Ga. App. 864 (812 SE2d 317) (2018); *Lupo v. Long*, 145 Ga. App. 876 (245 SE2d 73) (1978). Because Valley was entitled to file a direct appeal, South Atlantic Conference's motion to dismiss is denied.

2. Valley contends that the trial court abused its discretion in denying his motion for contempt because the court erroneously predicated its denial on its determination that Valley did not have enough years of service to vest in the Regional Retirement Plan and thus was not entitled to retirement benefits. According to Valley, the trial court, in so ruling, improperly reconsidered issues that were settled by the default judgment. We agree.

> As a general rule, where an order [granting or denying a motion for] civil contempt is supported by at least some evidence, we will not disturb that order absent an abuse of discretion by the trial court. Such an abuse of discretion occurs where the trial court either fails to apply

13

or misapplies the relevant law. Additionally, to the extent that the question of the validity of a contempt order involves a question of law, we review that question de novo.

(Citations and punctuation omitted.) *Rocker v. First Bank of Dalton*, 343 Ga. App. 501, 501-502 (806 SE2d 884) (2017).

"The defenses to a civil contempt are that the order was not sufficiently definite and certain, was not violated, or that the violation was not wilful." (Citation and punctuation omitted.) *Roberts*, 206 Ga. App. at 424 (2).

In a contempt proceeding, a court may interpret and clarify an existing order but may not modify the terms and obligations already set forth. To determine whether an order has been clarified, as opposed to being modified, the test is whether the new order is a reasonable clarification or so contrary to the apparent intent of the original order as to constitute a modification. The intent is found by looking at the content of the order and the context in which it was created.

(Citations and punctuation omitted.) *Eden*, 344 Ga. App. at 866 (1). See *Pineres v. George*, 284 Ga. 483, 483 (1) (668 SE2d 727) (2008); *Gallit v. Buckley*, 240 Ga. 621, 626 (3) (242 SE2d 89) (1978); *Harvey v. Lindsey*, 251 Ga. App. 387, 390 (1) (554 SE2d 523) (2001).

14

Here, as previously noted, Valley's original complaint alleged that the South Atlantic Conference promised Valley verbally and in writing that his over 24 years of prior service in the Seventh-day Adventist Church would be honored and credited toward the Regional Retirement Plan if he relinquished his right to receive any benefits in the NAD Retirement Plan and joined the Regional Retirement Plan; that based on that promise, Valley waived his right to receive his vested retirement benefits from the NAD Retirement Plan and joined the Regional Retirement Plan; and that, despite that promise and Valley's relinquishment of his other retirement benefits based on that promise, the South Atlantic Conference later informed Valley that it would not credit his prior years of church service toward the Regional Retirement Plan. Valley's complaint sought a declaration that the South Atlantic Conference was obligated to credit his prior years of service toward its Regional Retirement Program based on the assurances that had been given to him and to provide him with retirement benefits based on the parties' understanding and those assurances.

Given the allegations and prayer for relief in Valley's complaint and the South Atlantic Conference's subsequent default, the trial court entered default judgment declaring that the South Atlantic Conference was obligated, based on its verbal and written promise, to credit Valley's prior years of service toward the Regional

15

Retirement Plan and provide him with retirement benefits. Nothing in the record indicates that South Atlantic Conference subsequently moved for the trial court to reconsider its default judgment order or moved to set aside the judgment under OCGA § 9-11-60 (d).

The trial court, in later addressing Valley's motion for contempt, did not have authority to modify the terms and obligations set forth in the default judgment. See *Eden*, 344 Ga. App. at 866-868 (1). See also *Pineres*, 284 Ga. at 483 (1); *Gallit*, 240 Ga. at 626 (3); *Harvey*, 251 Ga. App. at 390 (1). Nonetheless, in denying the motion, the trial court held that the South Atlantic Conference did not have to credit Valley's prior years of service outside the United States in determining whether he vested in the Regional Retirement Plan and thus ruled that the South Atlantic Conference was not obligated to provide Valley with any retirement benefits. In so doing, the trial court did not merely clarify provisions of the default judgment, but instead acted contrary to the express directives contained in the default judgment that Valley's prior years of service be credited towards the Regional Retirement Plan and that the South Atlantic Conference provide Valley retirement benefits consistent with its prior assurances. Accordingly, the trial court impermissibly modified the default judgment through its order denying Valley's motion for contempt. See id.

Furthermore, in denying Valley's motion for contempt, the trial court failed to take into account that its prior order was a default judgment under which the South Atlantic Conference "admitted the facts alleged in the petition for declaratory judgment and waived any defenses thereto." *Tavakolian v. Agio Corp.*, 304 Ga. App. 660, 663 (2) (697 SE2d 233) (2010). See *Roundtree v. Everest Security Ins. Co.*, 304 Ga. App. 742, 743 (697 SE2d 315) (2010) (through default, defendant was properly deemed to have "admitted each and every material allegation of [the] complaint for a declaratory judgment" and was estopped from raising defense that plaintiff was not covered by insurance contract) (punctuation and footnote omitted); *Azarat Marketing Group v. Dept. of Administrative Affairs*, 245 Ga. App. 256, 257 (537 SE2d 99) (2000) ("[A] default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery.") (citations and punctuation omitted). It is true that "[a] trial court may exercise discretion in setting aside a default judgment within the same term of court. But after expiration of the term of court in which a default judgment is entered, the trial court's discretion in setting aside the default judgment is limited to the criteria set forth in OCGA § 9-11-60 (d)." (Citations and punctuation omitted.) *Ga. Receivables v. Murray*, 240 Ga. App. 676, 676-677 (524 SE2d 518) (1999). A trial court's discretion in setting aside a default

17

judgment is further circumscribed by the time limitations set forth in OCGA § 9-11-60 (f). See *Myles v. Myles*, 300 Ga. 261, 262-263 (794 SE2d 56) (2016).

Here, the default judgment was entered in May 2011, and thus the term of court for that judgment had long since passed by the time of the court's ruling on the motion for contempt in July 2017. See OCGA § 15-7-40 (terms of state courts prescribed by local law); Ga. Laws 1983, § 1, pp. 4501, 4502 ("The State Court of Fulton County shall have six terms each year beginning on the first Mondays in January, March, May, July, September, and November."). Nothing in the record indicates that South Atlantic Conference ever moved to set aside the default judgment under any of the criteria set forth in OCGA § 9-11-60 (d), and the three-year deadline for filing such a motion under OCGA § 9-11-60 (f) had expired.[7] Given the expiration

[7] Our Supreme Court has explained,

OCGA § 9-11-60 (f) establishes the exclusive time limitation for when a judgment is attacked by a motion to set aside. It provides that a judgment void for lack of subject matter or personal jurisdiction may be attacked at any time, and further provides that in "all other instances," a motion to set aside a judgment must be filed within three years of entry of the judgment. This language is susceptible to only one interpretation. It plainly provides that the only judgments subject to attack after more than three years are those which lack subject matter or personal jurisdiction.

(Citations and punctuation omitted.) *Myles*, 300 Ga. at 262. In the present case, the South Atlantic Conference has never contended that the trial court lacked subject matter or personal jurisdiction when it entered the default judgment, and thus the

of that time period, the trial court did not have the authority to set aside its default judgment, which concluded the South Atlantic Conference's liability and estopped it from raising any defenses. See *Myles*, 300 Ga. at 262-263; *Tavakolian*, 304 Ga. App. at 663 (2); *Roundtree*, 304 Ga. App. at 743; *Azarat Marketing Group*, 245 Ga. App. at 257; *Ga. Receivables*, 240 Ga. App. at 676-677. However, the trial court effectively set aside its prior default judgment when it denied the contempt motion on the grounds that Valley had insufficient years of qualifying service and the South Atlantic Conference was not obligated to provide him with retirement benefits.

Accordingly, because the trial court misapplied the law pertaining to contempt motions and to default judgments when it denied Valley's motion for contempt on the grounds that he did not have enough years of service to vest in the Regional Retirement Plan and was not entitled to retirement benefits, the court abused its discretion. See *Rocker*, 343 Ga. App. at 501-502 (trial court abuses its discretion by misapplying relevant law in ruling on contempt motion). We therefore reverse the trial court's order denying Valley's motion for contempt and remand for consideration of the motion consistent with this opinion.

three-year time limitation applied. See id. at 262-263.

*Judgment reversed and case remanded with direction. McMillian and Reese, JJ., concur.*